**TOBIN, Secretary of Labor, v. ALMA MILLS (three cases).**

Civ. A. Nos. 152, 149, 150.

United States District Court
W. D. South Carolina
Spartanburg Division.

Sept. 8, 1950.

Beverley R. Worrell, Regional Attorney, U. S. Department of Labor, Clarence Rhea, U. S. Department of Labor, Birmingham, Ala., for plaintiff.

Zach McGhee, Columbia, S. C., J. C. Fort, Gaffney, S. C., for defendants.

WYCHE, Chief Judge.

This case is one brought to enforce the provisions of the Fair Labor Standards Act of 1938, Act of June 25, 1938, c. 676, 52 Stat. 1060, Title 29 U.S.C.A. § 201 et seq. It is now before me on defendant's motion to vacate the judgment against it and on the plaintiff's petition that defendant be adjudged in civil contempt.

On August 23, 1940, judgments were entered in favor of the Administrator of the Wage and Hour Division, United States Department of Labor, against certain defendants in this court, in the following actions:

| | |
|---|---|
| Fleming v. Hamrick Mills, | C. A. 148 |
| Fleming v. Musgrove Mills, | C. A. 149 |
| Fleming v. Vogue Mills, | C. A. 150 |
| Fleming v. Limestone Mills, | C. A. 151 |
| Fleming v. Alma Mills, | C. A. 152 |

These judgments permanently enjoined and restrained the defendants, their officers, agents, servants, employees and attorneys, and all other persons acting or claiming to act in their behalf and interest, from violating the minimum wage, overtime, record-keeping and shipping provisions of the Act, including both provisions of the Act then in effect, and provisions of the Act to be effective on and after certain specified dates.

By motions dated March 16, 1949, defendants in the above cases sought to vacate the judgments. On April 7, 1949, William R. McComb, successor in office to Philip B. Fleming, was substituted as plaintiff, and on July 10, 1950, the Secretary of Labor was substituted as plaintiff.

At a pre-trial conference held on April 8, 1949, I vacated the judgments against Limestone and Hamrick Mills. The Administrator was granted time to make an investigation of the operations of the three remaining defendants, Alma, Vogue and Musgrove Mills.

The Administrator, on January 17, 1950, filed a petition praying that the defendant Alma Mills be adjudged in civil contempt, setting out that the defendant had violated the court's decree by violating the overtime provisions of the Act, failing to maintain proper records, and shipping goods in in-terstate commerce which were produced by employees employed in violation of the Act.

The defendant responded to the petition for adjudication of contempt by reasserting the allegations of its prior motion to vacate and by setting up as a defense to the petition the statute of limitations contained in the Portal-to-Portal Act of 1947, c. 52, 61 Stat. 84, 29 U.S.C.A. § 251 et seq., and further asserted that any hours worked without proper payment therefor by any employee was work performed contrary to contract, custom or practice and that the Portal-to-Portal Act barred judgment in plaintiff's favor on this ground.

At the hearing on the petition for contempt, the plaintiff presented witnesses, all but one of which are, or were, employees of the defendant, the other witness being an investigator for the Wage and Hour Division, Department of Labor. The employee witnesses testified that during their employment from September, 1946, and until sometime in April, 1949, they came to work prior to the time for the shift on which they were to work began, and would perform certain clean-up activities, duties which they were supposed to do on their regular eight-hour shift. This work was done contrary to instructions which had been given them and without the knowledge or consent of the defendant. The witnesses testified that they had performed these activities prior to the start of their shift in order that the remaining duties which they were to perform during their regular shift would not be as hard; they did not expect any compensation for this pre-shift work.

Counsel upon the hearing of the petition for contempt stipulated that "there was no contract written or otherwise, or custom or practice in effect which provided for the compensation of these employees for the pre-shift time. That applies for the period subsequent to May 27, 1947."

Upon the foregoing facts the plaintiff asks: (1) that defendant's motion to vacate the judgment be denied, and (2) that the payment and record-keeping practices and other acts be adjudged in violation of the judgment of August 23, 1940, and that the court adjudge the defendant to have com-

mitted civil contempt of this court; that the defendant be required and compelled to obey said judgment; that the defendant be required and compelled to make payment of the wages required by said judgment to be paid; and that such other and further relief be granted as the court may deem satisfactory and proper to coerce the defendant to comply with said judgment and to purge it of its contempt, including the imposition of a compensatory fine to reimburse petitioner for the costs and expenses of this litigation and the investigatory work connected with it.

The questions presented by this motion and petition are as follows:

(1) Is an injunction which restrained defendant from violating the minimum wage and overtime provisions of the Fair Labor Standards Act void when it encompasses certain provisions of the Act, the effective date of which had not been reached at the date of the issuance of the injunction and when the injunction is written in the general words of the statute?

(2) Do the activities upon which the alleged contempt is based fall within the scope of the exceptions provided for in the Portal-to-Portal Act of 1947, and does the Portal-to-Portal Act operate so as to place a limitation on contempt proceedings brought by the Wage and Hour Administrator in an action wherein a judgment was entered enjoining violation of the Fair Labor Standards Act of 1938?

(3) Is it necessary in a proceeding in civil contempt that the aggrieved party prove the contemptuous acts of the alleged contemnor were willfully done?

(4) Should the court, in the exercise of its power to grant full remedial relief in civil contempt proceedings under the Fair Labor Standards Act, require the defendant, in order to purge itself of contempt, to make restitution of back wages found due and to pay a compensatory fine to the Administrator measured by the amount of his costs in investigating and presenting the action?

(5) What is the correct formula for determining the regular hourly rate of pay under the provisions of the Fair Labor Standards Act?

The judgment which enjoined the defendant from violating the minimum wage and overtime provisions of the Act, was framed in the language of the statute. Such judgment, though general, is valid and can be enforced in a civil contempt action. The defendant at the time of the issuance of the injunction did not appeal from the judgment, nor did it seek a modification or clarification by the District Court. Both of these remedies were available to the defendant. McComb v. Jacksonville Paper Co., 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599.

The contempt proceeding "does not open to reconsideration the legal or factual basis of an order alleged to have been disobeyed. * * * ." Maggio v. Zeitz, 333 U.S. 56, 68 S.Ct. 401, 408, 92 L.Ed. 476; Swift & Co. v. United States, 276 U.S. 311, 48 S.Ct. 311, 72 L.Ed. 587.

In the case of McComb v. Jacksonville Paper Co., supra, 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599, the Supreme Court found the defendant in contempt of an injunction containing the same or similar language as that contained in the decree in this case. The court held that a decree enjoining defendant from violating specific statutory provisions of the Act was not too general and pointed out that if the decree was too burdensome the defendant's proper remedy was by appeal or by petition to the "District Court for a modification, clarification or construction of the order." 336 U.S. at page 192, 69 S.Ct. at page 500. In that case, as in the instant case, at the time of the entry of judgment, a minimum wage of thirty cents per hour was in effect, and in both cases the decrees made provisions for the increase in the minimum wage to forty cents per hour.

An injunction by its nature is prospective and acts to affect future conduct. An injunction deals primarily not with past but with threatened future violations. Swift & Co. v. United States, supra, 276 U.S. 311, 48 S.Ct. 311, 72 L.Ed. 587; Walling v. Shenandoah-Dives Mining Co., 10

Cir., 134 F.2d 395; Holland v. Amoskeag Mach. Co., D.C.N.H., 44 F.Supp. 884; Walling v. Panther Creek Mines, 7 Cir., 148 F.2d 604. The function of an injunction is preventive. Injunctive process is designed to deter violations or to modify future conduct. Hecht Co. v. Bowles, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754; Walling v. T. Buettner & Co., 7 Cir., 133 F.2d 306; McComb v. Goldblatt Bros., 7 Cir., 166 F.2d 387.

The defendant's position that the injunction entered against it in 1940 is void because it has prospective application is without legal basis and conflicts with judicial precedent. An injunction may issue in anticipation of, or in face or threatening future wrong. Swift & Co. v. United States, supra, 276 U.S. 311, at page 315, 48 S.Ct. 311, 72 L.Ed. 587.

Turning now to the next question, it is the defendant's position that the stipulation quoted above bars the maintenance of the present petition for contempt under the provisions of the Portal-to-Portal Act on the ground that the pre-shift activities alleged and shown to have been performed were not compensable by contract or a custom or practice. The plaintiff, on the other hand, takes the position that the stipulation has no effect whatsoever on the maintenance of the contempt proceeding contending that the pre-shift activities are not affected by the Portal-to-Portal Act since they were not "preliminary" or "postliminary" activities but were "principal" activities performed prior to the regular working hours, and it further contends that the Portal-to-Portal Act cannot and does not affect actions brought by the Administrator to enforce outstanding injunctions under the Fair Labor Standards Act.

The defendant's contention is based on sections 2(a) and 4(b) of the Act, 29 U. S.C.A. §§ 252(a) and 254(b). Section 2(a) provides that "No employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938, as amended * * * (in any action or proceeding commenced prior to or on or after the date of the enactment of this Act), on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any activity of an employee engaged in prior to the date of the enactment of this Act, *except an activity which was compensable by either"* an express provision of a written or non-written *contract or a custom or practice* in effect at the time of such activity. (Emphasis added.) Section 4(b) reiterates the same provisions as Section 2(a) except that it applies to future claims under the Fair Labor Standards Act, while Section 2(a) applies to existing claims.

This raises the question whether or not the pre-shift activities performed in the instant case were activities compensable by contract or a custom or practice. It has been stipulated that "there was no contract written or otherwise, or custom or practice in effect which provided for the compensation of these employees for the pre-shift time."

Congress when it passed the Portal-to-Portal Act expressed its displeasure with the interpretation given the Fair Labor Standards Act of 1938 by the Supreme Court in the following cases: Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949, 152 A.L.R. 1014; Jewell Ridge Coal Corp. v. Local No. 6167, 325 U.S. 161, 65 S.Ct. 1063, 89 L.Ed. 1534; and Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515. This displeasure is shown in the Report of the House Judiciary Committee when H.R. 2157, the Portal-to-Portal Act was reported out of the committee. It is there stated, U.S.Code Cong.Serv., 80th Cong., 1st Sess., p. 1030:

"The Fair Labor Standards Act does not define 'work' or 'workweek' and does not prescribe what preliminary or incidental activities shall be compensable under the provisions of the law. That was left to be settled by the employer and employee, either by express agreement or by implied agreement, based on the custom or practice in that particular place of employment. That had been the general situation for many years prior to the passage of the act.

"In Anderson v. Mt. Clemens Pottery Co. the Supreme Court had before it important issues 'concerning the proper determination of working time for purposes of the Fair Labor Standards Act.' Involved was the question whether time spent in walking on the employer's premises to the work station and time spent in certain preliminary and incidental activities must be included in the compensable workweek.

"The Court said:

"It follows that the time spent in walking to work on the employer's premises, after the time clocks were punched, involved 'physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business' (Tennessee Coal, Iron & R. Co. v. Muscoda Local, 321 U.S. 590, 598 [64 S.Ct. 698, 88 L.Ed. 949]; Jewell Ridge Coal Co. v. Local No. 6167, 325 U.S. 161, 164-166 [65 S.Ct. 1063, 89 L.Ed. 1534]). Work of that character must be included in the statutory workweek and compensated accordingly, regardless of contrary custom or contract."

The Congress rightly called this a far-reaching result; in fact it found the result so far-reaching that it passed the Portal-to-Portal Act to put an end to claims which would have wrecked the entire economy of the nation had they been allowed to proceed to a conclusion under the law of the Mt. Clemens Pottery Co. case.

The defendant contends that the Portal-to-Portal Act goes so far as to strike down claims for overtime work where an employee performs part of his "principal" activities prior to the commencement of his regular shift on which the activities are to be performed. I cannot agree with this contention.

I am in accord with that portion of the interpretation given the Portal-to-Portal Act by the Administrator concerning the question of what is considered to be the "principal" activity or activities of an employee within the terms of Section 4 of the Act. The Administrator's interpretation of the Act is found in Title 29, Code of Federal Regulations, 1947 Supp., commencing at page 4401. Section 790.8 of the Regulations, p. 4413, provides in part as follows:

"(a) An employer's liabilities and obligations under the Fair Labor Standards Act with respect to the 'principal' activities his employees are employed to perform are not changed in any way by section 4 of the Portal Act, and time devoted to such activities must be taken into account in computing hours worked to the same extent as it would if the Portal Act had not been enacted. But before it can be determined whether an activity is 'preliminary or postliminary to (the) principal activity or activities' which the employee is employed to perform, it is generally necessary to determine what are such 'principal' activities.

"The use by Congress of the plural form 'activities' in the statute makes it clear that in order for an activity to be a 'principal' activity, it need not be predominant in some way over all other activities engaged in by the employee in performing his job; rather, an employee may, for purposes of the Portal-to-Portal Act, be engaged in several 'principal' activities during the workday. The 'principal' activities referred to in the statute are activities which the employee is 'employed to perform'; they do not include noncompensable 'walking, riding, or traveling' of the type referred to in section 4 of the act. * * * The legislative history further indicates that Congress intended the words 'principal activities' to be construed liberally in the light of the foregoing principles to include any work of consequence performed for an employer, no matter when the work is performed. A majority member of the committee which introduced this language into the bill explained to the Senate that it was considered 'sufficiently broad to embrace within its terms such activities as are indispensable to the performance of productive work.' "

A similar interpretation is given the provisions of section 4 of the Act in the message of the President when he returned the signed Act to Congress. In this message he states that "the legislative history of the Act shows that the Congress intends that

the words 'principal activities' are to be construed liberally to include any work of consequence performed for the employer, no matter when the work is performed."

■ In the instant case the activities on which the contempt is based were activities which were a part of the work to be performed by the employees during the regular shift on which they were employed. The activities do not fall within the purview of the Act excluding certain "preliminary" and "postliminary" activities. Instead they are part of the "principal" activities to be performed by the employees and for which they were employed. Cf. Central Missouri Tel. Co. v. Conwell, 8 Cir., 170 F.2d 641.

We come now to the determination of the question of whether or not the Portal-to-Portal Act places any limitation on proceedings in contempt brought by the Administrator. The plaintiff strongly contends that it does not, but that its provisions apply solely to actions brought by employees for unpaid minimum wages, unpaid overtime compensation, or liquidated damages under the Fair Labor Standards Act.

This contention is answered by the Report of the Judiciary Committee of the House wherein it is stated that "The sections (Sections 3 and 4 of the Act) apply to all actions and proceedings of every kind based on the activities in question, including all suits for wages, damages, or penalties, actions for injunctions and criminal prosecution."

It would seem that the plaintiff's position is that though the employee himself has no right under the provisions of the Portal-to-Portal Act to maintain an action to recover unpaid minimum or overtime wages or liquidated damages, yet the Administrator where he has an injunction to enjoin violations of the Fair Labor Standards Act can still recoup such wages for the benefit of the employee. Such an application of the Portal-to-Portal Act would operate to defeat the purpose of the Act. The Portal-to-Portal Act has taken away certain substantive rights which existed prior to its enactment, which rights were given to employees (and to the Administrator) by the

Fair Labor Standards Act. If plaintiff's contention were adhered to, these substantive rights would have been taken away from the employee and yet at the same time remain there for his benefit in an action brought by the Administrator.

■ The Act itself shows by its very terms that such a construction was never intended to be placed thereon. In every instance the statute uses the phrase "no employer shall be subject to any liability or punishment". No limitation is placed on these words to affect an exclusion as to one individual or another. There just is no right in existence for anyone to enforce.

■ What has been said above in reference to the taking away of substantive rights must likewise be said as to the statute of limitations set up in section 6 of the Act, 29 U.S.C.A. § 255. The plaintiff urges that the limitation in this statute does not apply to the instant case. This argument is based on the general rule that limitations do not run against the government unless the statute imposing them clearly indicates the intention that they so apply. United States v. Nashville etc. R. Co., 118 U.S. 120, 6 S.Ct. 1006, 30 L.Ed. 81.

The plaintiff cites the case of United States v. Silliman, 3 Cir., 167 F.2d 607, wherein it is held that the general rule as to the statute of limitations not applying to the government likewise applies whenever the United States is the real party in interest, whether the suit is brought by it or in the name of another but for its benefit. However, here, in respect of the restitution of back wages, the proceeding is for the benefit of the employees in an action brought by an official acting in behalf of the United States and the employees.

Admittedly the statute of limitations would apply to any action brought by the employees. What greater right does the party suing have than the party for whose benefit the suit is brought? He must be limited in his recovery to that which the holder of the beneficial interest is entitled to.

Section 6 of the Portal-to-Portal Act provides as follows:

"Any action commenced on or after the date of the enactment of this Act, to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or the Bacon-Davis Act—

"(a) if the cause of action accrues on or after the date of the enactment of this Act—may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued;

"(b) if the cause of action accrued prior to the date of the enactment of this Act— may be commenced within whichever of the following periods is the shorter: (1) two years after the cause of action accrued, * * * ;

"(c) * * * ."

The courts have held that a cause of action under the Fair Labor Standards Act for unpaid minimum wages or unpaid overtime compensation and for liquidating damages accrues when the employer fails to pay the required compensation for any workweek at the regular pay day for the period in which the workweek ends. Reid v. Solar Corp., D.C., 69 F.Supp. 626; Mid-Continent Petroleum Corporation v. Keen, 8 Cir., 157 F.2d 310. See also, Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296; Rigopoulos v. Kervan, 2 Cir., 140 F.2d 506, 151 A.L.R. 1126.

■■■■ An action is considered to be commenced under the Portal-to-Portal Act, Section 7, 29 U.S.C.A. § 256, on "the date when the complaint is filed". In this case where the proceeding is one of contempt, the action would be considered commenced on the date the petition was filed, which is January 17, 1950, thus limiting the action to violations which occurred subsequent to January 17, 1948.

There is little issue taken as to the question of the necessity of the aggrieved party to show that the alleged civil contempt was willfully committed by the contemnor. If the defendant violated the injunction, then it has committed civil contempt without regard to the question of whether the violations were intentional. McComb v. Jacksonville Paper Co., supra, 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599; McComb v. Norris, 4 Cir., 177 F.2d 357.

■■■■ It is well settled by decisions of the Supreme Court and by the Court of Appeals for the Fourth Circuit that the power of the District Court in civil contempt proceedings by the Wage and Hour Administrator includes the power to order the contemnor to make restitution of back wages to employees and to order the payment of a fine to compensate the government for the investigation and presentation of the case. McComb v. Jacksonville Paper Co., supra, 336 U.S. 187, 69 S.Ct. 497, 93 L. Ed. 599; McComb v. Norris, supra, 4 Cir., 177 F.2d 357.

The court in the Norris case quoted the Supreme Court on the question of the payment of wages. It stated in 177 F.2d at pages 358, 359: " 'We have no doubts concerning the power of the District Court to order respondents, in order to purge themselves of contempt, to pay the damages caused by their violations of the decree. * * * We are dealing here with the power of a court to grant the relief that is necessary to effect compliance with its decree. The measure of the court's power in civil contempt proceedings is determined by the requirements of full remedial relief. * * * ' " The court ordered the payment of the back wages due the employees and the payment of a compensatory fine to cover the expenses of investigation and presentation of the case.

We come now to the final question for determination. What is the proper formula for determining the regular hourly rate under the Fair Labor Standards Act?

Where an employer has kept records in accordance with the requirements of the Act and regulations, the amount of overtime work performed is easily ascertainable. Where he fails to keep proper records "the employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements" of the Act.

Anderson v. Mt. Clemens Pottery Co., supra, 328 U.S. 680, at page 688, 66 S.Ct. 1187, at page 1192, 90 L.Ed. 1515. The court held that the burden of proof has been sustained as to the work performed when an employee "proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."

■ The correct method for determining the regular rate of pay is found in the case of Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L. Ed. 1682. As is stated in that case in 316 U.S. at page 580, 62 S.Ct. at page 1221, "No problem is presented in assimilating the computation of overtime for employees under contract for a fixed weekly wage for regular contract hours which are the actual hours worked, to similar computations for employees on hourly rates." The court hold that what is meant by "regular rate" of pay is hourly rate and that where an employee is employed on an hourly rate basis, the proper rate for overtime according to the statute is one and one-half times the regular rate. The formula attempted to be applied by the defendant in the instant case, which is the quotient of the weekly pay divided by the total number of hours worked, is only applicable where the employee is employed under a weekly wage with fluctuating hours. Such is not the case here.

From the foregoing it is concluded:

(1) That the injunction is valid and enforceable, subject to the limitations placed upon it by the Portal-to-Portal Act.

(2) That there has been a contempt of the injunction in the present action and in order to purge itself of the contempt, the defendant must make restitution of the unpaid overtime wages not barred by the statute of limitations and a compensatory fine in the amount of the expenses for the investigation and presentation of the case.

■ The judgments permanently enjoining the defendants Alma Mills, Musgrove Mills and Vogue Mills from violating the provisions of the Fair Labor Standards Act were entered on August 23, 1940.

All of these defendants are owned, managed, operated and dominated by substantially common officers, who are members of the same family. It is not contended that Musgrove Mills and Vogue Mills violated any of the provisions of the restraining orders. The testimony shows that the defendant Alma Mills has made bona fide efforts to comply with the provisions of the judgment against it, and that such defendant did not intentionally or willfully violate the provisions of the same. The violations were caused by the employees of the defendant Alma Mills acting for their own benefit and against the instructions and orders of such defendant. It is my opinion that it is no longer equitable that the judgments should have prospective application, and for this reason it should be ordered that all of the above named defendants be relieved from such judgments. Rule 60 (b) (5, 6), Rules of Civil Procedure, 28 U.S.C.A.

An order for judgment in accordance with the views expressed herein will be signed upon presentation.