John T. DUNLOP, Secretary of Labor, United States Department of Labor, Plaintiff-Appellant,

v.

CITY ELECTRIC, INC., and Paul R. Roland, Defendants-Appellees.

No. 74–2587.

United States Court of Appeals, Fifth Circuit.

Feb. 18, 1976.

396

Wm. J. Kilberg, Sol. of Labor, Paul Brenner, U. S. Dept. of Labor, Washington, D. C., George T. Avery, Reg. Sol., Wm. E. Everheart, Atty., U. S. Dept. of Labor, Dallas, Tex., Carin Ann Clauss, Associate Sol., Donald S. Shire, U. S. Dept. of Labor, Washington, D. C., for plaintiff-appellant.

E. B. Fuller, Austin, Tex., for defendant-appellee.

Before WISDOM, CLARK and RONEY, Circuit Judges.

WISDOM, Circuit Judge:

This appeal is from a denial of relief sought by the Secretary of Labor under § 17 of the Fair Labor Standards Act of 1938 (29 U.S.C. § 201 et seq.), claiming back wages due certain employees for overtime work performed on behalf of their employer, City Electric, Inc. and the individual defendant, Paul R. Roland.[1] The district court found that the work in question was performed before 8:00 a. m., the time at which the workday began, but held that the activities fell within the excepting language of § 4 of the Portal-to-Portal Act. This provision relieves employers from liability under the Fair Labor Standards Act for work performed preliminary to an employee's principal activity. 29 U.S.C. § 251 et seq. On this appeal, the Secretary urges that the judgment below rested on an erroneous reading of the Portal-to-Portal Act.[2] We agree with these contentions. We reverse and remand.

---

1. The defendant-corporation, a large electrical subcontracting firm in Austin, Texas, employing an average of thirty-five workers, ceased doing business during the final quarter of 1971 but retained its corporate status. The individual defendant, Paul R. Roland, was president, sole stockholder, and manager of the corporation, and was found by the trial court to be an "employer" within the meaning of the Fair La-

bor Standards Act, 29 U.S.C. § 203(d). That finding was not appealed.

2. Although the determination whether certain activities come within the exceptions to the F.L.S.A. created by the Portal-to-Portal Act is usually termed a question of fact, the review of which is limited by the "clearly erroneous" standard of F.R.Civ.P. 52(a), this Court has

The employees on whose behalf the Secretary brought this action are non-union journeymen electricians and electricians' helpers employed to install and repair electrical wiring. Although the employees' compensation was calculated on the basis of a workday beginning at 8:00 a. m., the trial court found that they usually arrived between fifteen and twenty minutes early to perform tasks preparatory to their departing the shop for the various jobsites. These tasks included filling out daily time sheets, material sheets, and supply and cash requisition sheets, checking job locations, removing from trucks trash accumulated during the previous day's work, loading the trucks with standard materials and any additional materials needed for the particular day's job, fueling the trucks, and picking up electrical plans for the day's job. These duties were to be completed before 8:00 a. m. to enable the men to depart from the shop by the beginning of their paid workday.

On the basis of these tasks, regularly performed before each workday, the Secretary contended that the employees were entitled to overtime compensation as provided in § 7(a)(1) of the Fair Labor Standards Act. The statute provides in pertinent part:

> Except as otherwise provided in this section, no employer shall employ any of his employees who . . . is engaged . . . in the production of goods for commerce for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.[3]

The employer denied liability under the F.L.S.A., relying on § 4(a)(2) of the Portal-to-Portal Act of 1947, specifically relieving an employer from liability under the F.L.S.A. for "activities which are preliminary to . . . [an employee's] principal activity or activities". 29 U.S.C. § 254(a)(2). The single issue presented to the district court was whether the pre–8:00 a. m. tasks were compensable under § 7 of the F.L.S.A. as work performed in excess of the normal forty-hour workweek, or were "preliminary" activities subject to the excepting language of § 4 of the Portal-to-Portal Act.

The district judge denied relief on two grounds. First, he found that most of the tasks, including the paper work and servicing of the trucks, fell within the § 4 exception and were therefore not compensable. Second, he found that those remaining tasks that "may" have been compensable under § 7, such as the picking up of plans and loading of supplies, required so little time as to be *de minimis* and were therefore not compensable.

I.

■■■ By enacting § 4(a)(2) of the Portal-to-Portal Act, Congress relieved employers from back wage liability under the F.L.S.A. for time spent by their employees in "activities which are preliminary to . . . [their] principal activity or activities" and which occur "prior to the time on any particular workday at which [the] employee commences . . . such principal activity or activities."[4] The use of the phrase

held that "[f]indings of fact may also be set aside if they were induced by an erroneous view of the law." *Blum v. Great Lakes Carbon Corp.*, 5 Cir. 1969, 418 F.2d 283, 287.

**3.** 29 U.S.C. § 207(a)(1). Section 15(a)(2) of the Act makes it unlawful for any person to violate any of the provisions of § 7 (29 U.S.C. § 215(a)(2)). Section 17 grants district courts jurisdiction to restrain violations of § 15(a)(2), including the restraint of any withholding of overtime compensation (29 U.S.C. § 217).

**4.** Notwithstanding this exemption from liability for preliminary and postliminary activities, § 254(b)(2) of the Portal-to-Portal Act precludes application of the exemption once the activities in question are compensable by "custom or practice in effect". Although the district court found it unnecessary, in view of its holding, to make specific findings on this issue, there was unrefuted testimony that in the Austin, Texas region, most nonunion electrical contractors paid for work of the type in-

"activity or activities" was not inadvertent. The legislative history and the administrative interpretations of the Portal-to-Portal Act support the view that the phrase "activity or activities" was used to dispel the notion that any activities not inextricably tied to a single predominant principal activity could be considered noncompensable. As the Secretary's Interpretative Bulletin, 29 C.F.R. § 790.8(a), notes:

The use by Congress of the plural form "activities" in the statute makes it clear that in order for an activity to be a "principal" activity, it need not be predominant in some way over all other activities engaged in by the employee in performing his job; rather, an employee may, for purposes of the Portal-to-Portal Act, be engaged in several "principal" activities during the workday. The "Principal" activities referred to in the statute are activities which the employee is "employed to perform"; . . . The legislative history . . . indicates that Congress intended the words "principal activities" to be construed liberally in light of the foregoing principles to include any work of consequence performed for an employer, no matter when the work is performed.[5]

■ This directive to construe liberally the terms "principal activity or activities" to encompass "any work of consequence" was reiterated by the President in his Message to Congress on Approval of the Portal-to-Portal Act[6] and has been followed by the majority of courts interpreting the two statutes. Decisions construing the Portal-to-Portal Act in conjunction with the F.L.S.A. make clear that the excepting language of § 4 was intended to exclude from F.L.S.A. coverage only those activities "predominantly . . . spent in [the employees'] own interests". *Jackson v. Air Reduction Co.,* 6 Cir. 1968, 402 F.2d 521, 523. No benefit may inure to the company. *Blum v. Great Lakes Carbon Corp.,* 5 Cir. 1969, 418 F.2d 283, 287. The activities must be undertaken "for [the employees'] own convenience, not being required by the employer and not being necessary for the performance of their duties for the employer". *Mitchell v. Southeastern Carbon Paper Company,* 5 Cir., 1955, 228 F. 2d 934.[7] The exemption was not in-

volved here, as did all organized contractors. The undisputed testimony of the plaintiff's witnesses established that of those employees required by their employers to arrive before 8:00 a. m., none performed active duties during that time.

5. "It is well settled that such administrative interpretations are entitled to great weight." *Brennan v. Greene's Propane Gas Service, Inc.,* 5 Cir. 1973, 479 F.2d 1027, 1031 n. 13. As we stated in *Brennan v. Great American Discount and Credit Company, Inc.,* 5 Cir. 1973, 477 F.2d 292, 296–97, "[a]lthough courts are not bound by interpretative bulletins, see 29 C.F.R. § 779.8, they provide us with guidance simply because they reflect the position of those most experienced with the application of the Act". See *United States v. American Trucking Associations,* 1940, 310 U.S. 534, 549, 60 S.Ct. 1059, 1067, 84 L.Ed. 1345, 1354.

6. The President's Message stated in part:
As to Section 4, relating to future claims, the legislative history of the Act shows that Congress intends that the words "principal activities" are to be construed liberally to include any work of consequence performed

for the employer, no matter when the work is performed. We should not lose sight of the important requirement under the Act that all "principal activities" must be paid for, regardless of contract, custom, or practice. I am sure the courts will not permit employers to use artificial devices such as the shifting of work to the beginning or the end of the day to avoid liability under the law.
President's Message to Congress on Approval of the Portal-to-Portal Act, May 14, 1947, 93 Cong.Rec. 5418, 80th Cong., 1st Sess. (1947), *reprinted in* 1947 U.S.Code Cong. Service 1827–1828.

7. Examples of noncompensable activities specifically enumerated in the Senate report on the Portal-to-Portal Act as being "outside the employee's workday" and thus not compensable under the F.L.S.A., included "[c]hecking in or out and waiting in line to do so, changing clothes, washing up or showering, [and] waiting in line to receive paychecks". S.Rep. No.48, 80th Cong., 1st Sess. p. 47 (1947). In *Anderson v. Mt. Clemens Pottery Company,* 1946, 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515, the Supreme Court held the following

tended to relieve employers from liability for "any work of consequence performed for an employer" (*Secretary of Labor v. E. R. Field, Inc.*, 1 Cir. 1974, 495 F.2d 749, 751), from which the company derives "significant benefit". *Cherup v. Pittsburgh Plate Glass Company*, N.D. W.Va.1972, 350 F.Supp. 386, 391, *aff'd mem.*, 4 Cir. 1973, 480 F.2d 921, *cert. denied*, 1973, 414 U.S. 1068, 94 S.Ct. 578, 38 L. Ed.2d 474. Nor was the exemption to apply to work "performed . . . before or after the regular work shift . . . [as] an integral and indispensable part of the principal activities for which covered workmen are employed". *Steiner v. Mitchell*, 1956, 350 U.S. 247, 256, 76 S.Ct. 330, 335, 100 L.Ed. 267, 273.

In *Steiner v. Mitchell*, the Supreme Court held that time spent by employees taking showers and changing clothes after a work shift, when required by the employer as part of an industrial hygiene program, was not excluded from F.L.S.A. coverage by the Portal-to-Portal Act. On the same day, in *Mitchell v. King Packing Company*, 1956, 350 U.S. 260, 76 S.Ct. 337, 100 L.Ed. 282, the Court held that the knife sharpening activities of workmen employed as knifemen by a meat packer were an integral part of and indispensable to the various butchering activities for which they were principally employed, and were therefore compensable.

This Court has taken a broad view of "principal activities". In *Mitchell v. Mitchell Truck Line, Inc.*, 5 Cir. 1961, 286 F.2d 721, we reversed a lower court decision denying compensation to employee

truck drivers for time spent before their ordinarily compensable workday checking and fueling the trucks, driving them from the yard to the contractor's plant, waiting in line to be loaded and unloaded, returning to the yard from the last jobsite, and cleaning and refueling the trucks after the end of the workday. There too, we found such activities "certainly such an integral part [of] and so indispensable to the employees' main job as to be outside of the Portal-to-Portal exemption". 286 F.2d at 725.

In *Secretary of Labor v. E. R. Field, Inc.*, 1 Cir. 1974, 495 F.2d 749, the First Circuit recently held that an electrician employee who drove his employer's truck, loaded with tools, supplies, and other employees, from various jobsites after the eight-hour workday, was entitled to withheld back pay due under the F.L.S.A. The court explicitly rejected the employer's claim of exemption under the Portal-to-Portal Act, on the ground that the exemption does not cover "any work of consequence performed for an employer" and on the finding that the trucks driven by the employee "were primarily utilized as an integral and indispensable function of the defendant business." 495 F.2d at 751. These cases and others [8] support the liberal construction of the terms "principal activity or activities" urged by Congress, the President, and the Secretary of Labor in his Interpretative Bulletin, thus providing broad coverage under the F.L.S.A. and limiting application of the Portal-to-Portal Act's exemptions to those employee activities "which in no way enter into the production of goods".[9]

activities to be "preliminary" and thus within the Portal-to-Portal Act exemption: putting on aprons and overalls, removing shirts, taping or greasing arms, putting on finger cots, turning on switches for lights and machinery, and opening windows.

8. See, e. g. *D.A. & S. Oil Well Servicing, Inc. v. Mitchell*, 10 Cir. 1958, 262 F.2d 552; *Mayhue's Super Liquor Stores, Inc. v. Hodgson*, S.D.Fla. 1971, 19 WH Cases 917, 64 CCH Lab.Cas. ¶ 32,450, *reversed on other grounds*, 5 Cir. 1972, 464 F.2d 1196, *cert. denied*, 409 U.S. 1108, 93 S.Ct. 908, 34 L.Ed.2d 688; *Hodgson v.*

*Frisch Dixie, Inc.*, W.D.Ky.1971, 20 WH Cases 167, 66 CCH Lab.Cas. ¶ 32,557, *aff'd per curiam*, 6 Cir. 1972, 469 F.2d 82; *Hodgson v. Electric Service, Inc.*, M.D.Tenn.1971, 19 WH Cases 955, 65 CCH Lab.Cas. ¶ 32,464; *Tobin v. Alma Mills*, D.C.S.C.1950, 92 F.Supp. 728, *modified on other grounds*, 4 Cir. 1950, 192 F.2d 133.

9. Comments of Senator Cooper during the floor debates on the Portal-to-Portal Act. 93 Cong.Rec. 2300, 80th Cong., 1st Sess. (1947).

## II.

The court below gave a narrower interpretation of the F.L.S.A. and a broader interpretation of the Portal-to-Portal Act exemption than we think is warranted, either by the legislative history of the statutes or by the decisions construing them. In applying the standard of § 4 for exempting an employer from liability under § 7, the trial judge first determined that the employees' principal activity was "the installation and repair of electrical wiring". He then tested each of the allegedly compensable tasks to determine whether it was "directly related" to that previously defined principal activity (and therefore compensable), or was merely "preliminary" to the principal activity (and therefore not compensable under the excepting language of § 4). Finding that most of the pre-8:00 a. m. activities were not directly related to the principal activity of installing electrical wiring, the court concluded that they were not an integral and indispensable part of that principal activity and were thus not compensable. Two aspects of this analysis merit further scrutiny.

First, as noted above, it is not only an employee's single predominant principal activity (and activities indispensable to it) which are compensable under the F.L.S.A., but rather all principal activities and any tasks incidental to them. By narrowly defining the principal activity of the employees in the instant case as that of "installing and repairing electrical wiring", the district court severely limited the range of potentially compensable activities, thus committing the precise error which Congress sought to avoid in its careful wording of the statute. Such a restrictive characterization of the employees' principal activities is neither consistent with the legislative history of the Portal-to-Portal Act nor compelled by cases construing it. Our holding in *Mitchell Truck Lines* that the disputed activities were compensable as an integral and indispensable part of the employees' principal activity of truck driving, did not foreclose a finding of compensability for work deemed an integral and indispensable part of the employer's operations as a whole, though not directly related to any single principal activity. Thus, we find that the trial court's initial definition of the employees' principal activity as that of "installing and repairing electrical wiring" was an unnecessarily limited one.

Second, we take issue with the lower court's test for determining whether an activity is an integral part of and indispensable to an employee's principal activities.[10] While it is true that the activities cited in *Mitchell Truck Lines*, that is, loading and refueling trucks, were generically linked to the employees' duties as truck drivers, the pre-8:00 a. m. activities of the employees here, though not limited to the installation and repair of electrical wiring, were no less indispensable to the operation of the business. The filling out of time sheets, material sheets, and supply and cash requisition sheets enabled the employer to calculate his costs and to keep accurate records as required by §§ 11(c) and 15(a)(5) of the F.L.S.A.[11] The fueling, loading, and cleaning out of the trucks were also activities required by the employer in the normal course of the employees' jobs.

The test, therefore, to determine which activities are "principal" and which are "an integral and indispensable

---

10. We recognize, of course, that the distinction between "principal activities" and tasks deemed "an integral part of and indispensable to" such principal activities is primarily a semantic one and will often turn on the court's choice of analysis. We treat the two as distinct concepts here, simply to ensure against erroneous analysis under either test for compensability.

11. The fact that the employees too may have benefited from filling out time sheets recording their hours worked and the compensation due them is not inconsistent with the conclusion that the work was "an integral and indispensable function of the defendant business". *Secretary of Labor v. E. R. Field, Inc.*, 1 Cir. 1974, 495 F.2d 749, 751.

part" of such activities, is not whether the activities in question are uniquely related to the predominant activity of the business, but whether they are performed as part of the regular work of the employees in the ordinary course of business. It is thus irrelevant whether fueling and unloading trucks is "directly related" to the business of electrical wiring; what is important is that such work is necessary to the business and is performed by the employees, primarily for the benefit of the employer, in the ordinary course of that business.[12] We find that the pre-8:00 a. m. activities performed by the electricians and their helpers were within the broad range of "principal activities" performed at their employer's behest and for the benefit of the business; as such they were compensable activities for which the employees would ordinarily have been paid had such work been performed during the normal workday.

■ The only issue remaining is whether such activities, concededly within the range of compensable work under § 7 of the F.L.S.A., required so little time as to be *de minimis.* The trial court originally so held, but on the erroneous assumption that most of the pre-8:00 a. m. activities were excluded from coverage by the Portal-to-Portal Act. In light of our holding that all the cited activities should have been considered within the coverage of § 7, we remand for further determination whether all these activities combined still resulted in so slight an expenditure of the employees' time as to be *de minimis* and therefore not compensable.

The decision of the district court is reversed and remanded for proceedings consistent with this opinion.

---

**12.** *See U. S. Steel Company v. Burkett,* 4 Cir. 1951, 192 F.2d 489, 492; *D. A. & S. Oil Well Servicing, Inc. v. Mitchell,* 10 Cir. 1958, 262 F.2d 552, 554-55.