# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 11, 2013

Lyle W. Cayce
Clerk

No. 12-40382
Summary Calendar

JUSTIN GRIFFIN,

Plaintiff-Appellant,

v.

S&B ENGINEERS & CONSTRUCTORS, LIMITED,

Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 1:11-CV-60

Before STEWART, Chief Judge, and KING, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Justin Griffin appeals the district court's grant of summary judgment in favor of S&B Engineers and Constructors, Limited ("S&B"), claiming that the travel time spent on S&B mandatory bus rides to and from the Motiva Enterprises, L.L.C.'s Port Arthur Refinery Crude Expansion Project ("Motiva Plant") is compensable under the Fair Labor Standards Act of

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-40382

1938 ("FLSA"), 29 U.S.C. § 201 *et seq*. For the following reasons, we AFFIRM the district court's grant of summary judgment.

## I.

S&B is an engineering and construction services contractor in the petrochemical and refining industry. In 2007, S&B began providing construction services at the Motiva Plant in Port Arthur, Texas. Starting in May 2008, S&B hired manual laborers to work at the Motiva Plant. Laborers had the option of either parking at the F Parking lot, which was located nearby the Motiva Plant, or participating in a park and ride program.

In May 2010, S&B required its laborers to participate in a mandatory park and ride scheme.[1] This scheme required all laborers to park and ride S&B provided buses from the National Parking Lot (the "National Lot"), which is located approximately six to seven miles away from the Motiva Plant. Before boarding the buses between 5:30 a.m. to 6:30 a.m., laborers had to walk through turnstiles and were required to scan their Motiva Plant badge. S&B also provided a late arrival bus, which departed at 6:45 a.m.

The National Lot and S&B buses were considered Crude Expansion Project site extensions, and as a result, Motiva's rules of conduct applied to these areas. In particular, laborers were required to follow Motiva's Transportation Rules of Conduct, which included, but were not limited to, prohibitions of fighting and littering, using tobacco, consuming alcohol or controlled substances, and possessing weapons. Additionally, Motiva prohibited cell phones with cameras on the site. Laborers who violated these rules could be subject to

---

[1] Griffin disputes the motives behind the implementation of S&B's busing scheme. He contends that the busing scheme was based on the "business convenience and choices of Griffin's employer and its clients," and thus served as a commercial benefit to S&B. However, Griffin's commercial benefit argument does not bear on our decision because the material fact–that Griffin was required to ride S&B's buses to and from the Motiva Plant–is not in dispute.

disciplinary action such as removal from the bus, notification of misconduct to Motiva Plant officials, or termination from employment.

After arriving at the Motiva Plant, laborers had to scan their S&B badges and then proceeded to their appropriate work stations. At approximately 5:30 p.m., the buses transported the laborers back to the National Lot. The daily round-trip travel time to and from the Motiva Plant lasted approximately forty to sixty minutes.[2] S&B did not provide laborers with any job-related instructions prior to or during the bus rides or compensate them for the travel time to and from the Motiva Plant.

In December 2010, S&B hired Griffin to work as a journeyman electrician in the Sulphur Block Unit at the Motiva Plant. As did the other laborers, Griffin boarded and rode the buses to and from the Motiva Plant. On December 20, 2010, Griffin started working at the Motiva Plant and his job duties included running cable trays and pipe, pulling wire, performing electrical work, and completing paperwork. Griffin ended his employment with S&B in early January 2011.

After leaving S&B, Griffin filed a collective action suit on his behalf, and on behalf of similarly situated laborers, alleging S&B's mandatory busing scheme violated the FLSA because laborers were not compensated for their travel time. On June 3, 2011, the district court bifurcated discovery into two phases, limiting phase one to the issue of whether the travel time was compensable under the FLSA or precluded under the Portal to Portal Act. 29 U.S.C. § 254 (a). After the conclusion of phase one, S&B filed a motion for summary judgment, and Griffin filed a partial motion for summary judgment

---

[2] Griffin testified that the travel time to the Motiva Plant lasted approximately fifteen to thirty minutes. Griffin clarified however, that the travel time from the National Lot to the Motiva Plant was approximately twenty to twenty-five minutes. Nevertheless, S&B's busing schedule provided, "Normal bus run time is ~20 minutes, but, allowed [sic] 30 minutes per run for possible delays."

No. 12-40382

regarding the application of the Portal to Portal Act. Griffin maintained that the travel time was compensable because 1) the mandatory busing scheme served as an economic commercial benefit for S&B; 2) laborers were considered "to be on the worksite" during the bus rides and subject to Motiva Plant's rules of conduct which, if violated, could result in disciplinary action; and 3) the bus rides to and from the Motiva Plant were "integral and indispensable" to his work at the Motiva Plant under *Dunlop v. City Electric Inc.*, 527 F.2d 394 (5th Cir. 1976).[3] The district court granted summary judgment in favor of S&B, ruling that the travel time was not compensable under the FLSA. The district court further noted that the sole fact that S&B instituted a mandatory scheme does not *per se* render such travel time compensable. With respect to Motiva's Transportation Rules of Conduct, the district court explained that these rules were reasonably related to the "logistics of commuting," which is not a principal activity. Regarding Griffin's contention that the bus rides were "integral and indispensable" to his employment under *Dunlop*, the court stated that the "propriety of applying the *Dunlop* factors . . . is unclear." Nevertheless, even assuming *Dunlop* was applicable, the district court concluded that a full analysis under *Dunlop* was not necessary because "merely traveling or commuting does not confer a benefit on the employer because it does not relate to the duties the employee was hired to perform." Griffin timely appealed.

## II.

This court reviews the district court's grant of summary judgment de novo. *Admiral Ins. Co. v. Ford*, 607 F.3d 420, 422 (5th Cir. 2010). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and

---

[3] In *Dunlop*, we stated that activities are "principal" and thus "integral and indispensable" if the activities are "performed as part of the regular work of the employees in the ordinary course of business." 527 F.2d at 400-01. We further stated, "what is important is that such work is necessary to the business and is performed by the employees, primarily for the benefit of the employer, in the ordinary course of that business." *Id.* at 401.

4

admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must view all facts and evidence in the light most favorable to the non-moving party in considering a motion for summary judgment. *Dameware Dev., L.L.C. v. Am. Gen. Life Ins. Co.,* 688 F.3d 203, 206-07 (5th Cir. 2012).

"In 1938 Congress enacted the FLSA as a means of regulating minimum wages, maximum working hours, and child labor in industries that affected interstate commerce." *Reich v. Tiller Helicopter Servs., Inc.,* 8 F.3d 1018, 1024 (5th Cir. 1993). Under the FLSA, "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

In 1947, Congress amended the FLSA by enacting the Portal to Portal Act as a legislative countermand to earlier Supreme Court jurisprudence. 61 Stat. 84 (codified at 29 U.S.C. § 251(a)). Prior Supreme Court precedent accorded an expansive interpretation of "work" and "workweek," which was not defined in the FLSA. *IBP, Inc. v. Alvarez,* 546 U.S. 21, 25-26 (2005) (discussing prior Supreme Court precedent which evidenced broad interpretations of "work" and "workweek"). Pursuant to the Portal to Portal Act, employers are not subject to the payment of minimum wage to an employee under the FLSA for the following non-compensable activities:

> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>
> (2) activities which are preliminary to or postliminary to said principal activity or activities,

No. 12-40382

which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities. For purposes of this subsection, the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

29 U.S.C. § 254(a).

Thus, the Portal to Portal Act exempts employee compensation for ordinary commuting to and from work, or activities which are preliminary to or postliminary to the principal activity. *Id.*

### III.

### A.

Primarily, Griffin contends that S&B's mandatory busing scheme renders the applicable travel time compensable under the FLSA. In support of this contention, Griffin submits that our decision in *Vega v. Gasper*, 36 F.3d 417 (5th Cir. 1994), and an Eastern District of Texas federal district court's decision in *Johnson v. RGIS Inventory Specialists*, 554 F. Supp. 2d 693 (E.D. Tex. 2007) emphasized the voluntary use of transportation in concluding such travel time was not compensable under the FLSA.[4] Griffin contends that the travel time in the instant case is compensable because S&B's mandatory busing scheme is not

---

[4] Griffin also cites *Morillion v. Royal Packing Co.*, 995 P.2d 139 (Cal. 2000), a California Supreme Court decision, and *Hyman v. Efficiency, Inc.*, 605 S.E.2d 254 (N.C. Ct. App. 2004), a North Carolina Court of Appeals decision. These cases, however, are inapplicable to the present matter, as those courts interpreted state substantive law.

No. 12-40382

analogous to the transportation schemes in *Vega* and *Johnson*. Griffin further maintains that the laborers were considered to be "on the worksite" and subject to rules of conduct during the bus rides and that the bus rides were "integral and indispensable" to his work. Before assessing the merits of Griffin's arguments, we first consider our decision in *Vega* and the district's court's decision in *Johnson*.

## B.

In *Vega*, we addressed the question of whether farm workers' travel time to and from chile pepper fields was compensable under the FLSA. *Vega*, 36 F.3d at 424. We held that the travel time constituted ordinary-to-work or from-work travel, and thus was not compensable under the FLSA. *Id.* at 425. *Vega* involved a farmer contractor arrangement in which Gasper, a farm contractor, was hired by farms to hire, supervise, and pay farm workers. *Id.* at 422-23. The workers that Gasper hired provided their own transportation to a meeting site in El Paso, and were provided the option of riding Gasper's buses to the farms. *Id.* at 423. The travel time to the farms lasted approximately two to two-and-a half hours and the farmers were informed which fields they would work on that day during the ride. *Id.* The travel time from the farms back to El Paso lasted two hours. *Id.* Some of the workers filed suit against Gasper, claiming, *inter alia*, compensation for travel time to and from the farms under the FLSA. *Id.*

In holding that the travel time constituted ordinary to-work or from-work travel, and therefore was not compensable under the FLSA, we noted the following factors supporting our decision: 1) the workers performed no work prior to or during the bus rides; 2) the workers did not load tools or otherwise engage in preparatory work during the bus rides or prior to harvesting the chile peppers; 3) the workers' mere receipt of Gasper's instructions regarding field work and pay rate was insufficient to render such time compensable; 4) the workers' use of Gasper's buses was voluntary; 5) the length of travel time in

itself, did not render the travel time compensable; and 6) the workers did not have to travel between job sites after harvesting the chile peppers. *Id.* at 425.

In *Johnson*, a federal district court addressed the issue of whether an auditor's travel time to and from stores was compensable under the FLSA. *Johnson*, 554 F. Supp. 2d at 703-06. The *Johnson* court held that the travel time constituted ordinary home-to-work-and-back travel, and thus was not compensable under the FLSA. *Id.* at 706. RGIS, a provider of inventory services in the retail industry, furnished voluntary transportation from a meeting site for auditors who were assigned to work at retail stores located more than twenty miles from town or at stores located closer if there were logistical issues regarding transportation. *Id.* at 696-97. Johnson, who worked as an auditor with RGIS, typically rode on RGIS's vans from the meeting site to stores that she was assigned to audit. *Id.*

Johnson filed suit under the FLSA alleging, *inter alia*, the travel time was compensable because travel was a principal activity of her work and that she performed work prior to leaving the meeting site, which, according to Johnson, included loading equipment into the van. *Id.* at 703. As in *Vega*, the *Johnson* court evaluated many factors before concluding that Johnson's travel time was not compensable under the FLSA. The court first noted that use of RGIS's company van at the meeting site was voluntary but stated that, "[e]ven if use of the transportation was strongly encouraged by RGIS, this was related to business and commuting logistics rather than the auditors' principal activities . . . ." *Id.* at 704-05. The *Johnson* court further explained that Johnson was not required to report to the meeting site to receive work-related instructions, to pick up and carry equipment, or to perform other work. *Id.* at 705.

C.

As an initial matter, we note that there is no circuit precedent addressing whether a mandatory transportation scheme *per se* renders such travel time

compensable under the FLSA. However, our sister circuits that have discussed mandatory employer transportation schemes have disfavored fashioning such a *per se* rule. *See, e.g., Bonilla v. Baker Concrete Constr. Inc.*, 487 F.3d 1340, 1343 (11th Cir. 2007) ("The fact that the [construction] workers were required to ride authorized transportation . . . is not relevant to the outcome of this case because even mandatory travel time is exempted from compensation under the Portal to Portal Act."); *Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1288 (10th Cir. 2006) ("Pursuant to the Portal-to-Portal Act, employers are not required to compensate their employees for time spent 'traveling to and from' the place of their principal activities, and nothing in the statute indicates that there is a *per se* exception for employees just because they must travel with their co-workers."). S&B's mandatory busing scheme arrangement is simply normal traveling time that laborers would also be required to undertake by the mere fact of working at the Motiva Plant. 29 C.F.R. § 785.35 ("An employee who travels from home before his regular workday and returns to his home at the end of the workday is engaged in ordinary home to work travel which is a normal incident of employment. . . . Normal travel from home to work is not worktime."). Equally in this case, we decline to adopt such a *per se* rule.

Turning to the case at hand, we hold that the travel time is not compensable under the FLSA, as it constitutes ordinary home-to-work-and-back travel. First, Griffin's interpretation of the holdings in *Vega* and *Johnson* is misplaced. The voluntary use of transportation in those cases was not dispositive in concluding the travel time was noncompensable. In fact, as previously stated, the *Vega* and *Johnson* courts expressly took the opposite approach by specifically discussing several factors in concluding that the travel time was not compensable under the FLSA. Additionally, Griffin's deposition testimony is particularly instructive in our assessment of the factors that we deemed persuasive in *Vega*. Griffin conceded in his deposition that he neither

performed any work prior to the beginning of his shift at the Motiva Plant nor received any work-related instructions prior to or during the bus rides. He also acknowledged that he retrieved his tools after the daily safety meetings, which were held at the Motiva Plant at approximately 7:10am, and that he returned his tools at 5:20pm, ten minutes prior to the end of his shift. Furthermore, Griffin explained that S&B did not restrict him from engaging in personal activities such as sleeping and reading during the rides. Based on these facts, Griffin's travel time is not compensable. *Cf.* 29 C.F.R. § 785.38 ("Where an employee is required to report at a meeting place to receive instructions or to perform other work there, or to pick up and to carry tools, the travel from the designated place to the work place is part of the day's work, and must be counted as hours worked regardless of contract, custom, or practice.").

Although Griffin was required to follow Motiva's Transportation Rules of Conduct, we conclude these rules were simply logistical, administrative, and marginally restrictive, and not "integral and indispensable" to Griffin's activities as a journeyman electrician. *See Smith*, 462 F.3d at 1288 ("A restriction imposed on the manner in which the plaintiffs can travel to and from their workplace is relevant only if it shows that their travel time was integral and indispensable to their principal activities.").

Finally, we find persuasive the interpretative statements of the Wage and Hour Division of the Department of Labor (the "Department") in concluding the travel time in this case is not compensable under the FLSA. The interpretative statements issued by the Department are not promulgated regulations, but do provide insightful guidance to courts in evaluating claims brought under the FLSA. *Wirtz v. Keystone Readers Serv., Inc.*, 418 F.2d 249, 257 (5th Cir. 1969) ("[R]ulings, interpretations and opinions of the Administrator under [the FLSA], while not controlling upon the courts by reason of their authority, do constitute

a body of experience and informed judgment to which courts and litigants may properly resort for guidance."). In 29 C.F.R. § 790.7(f), the Department provides:

> Examples of walking, riding, or traveling which may be performed outside the workday and would normally be considered "preliminary" or "postliminary" activities are (1) walking or riding by an employee between the plant gate and the employee's lathe, workbench or other actual place of performance of his principal activity or activities; (2) riding on buses between a town and an outlying mine or factory where the employee is employed; and (3) riding on buses or trains from a logging camp to a particular site at which the logging operations are actually being conducted.

The Department's interpretative statements thus specifically contemplate busing to a place of employment as an exemption under the FLSA pursuant to the Portal to Portal Act. Therefore, the travel time on S&B's mandatory busing scheme is not in conflict with prevailing FLSA jurisprudence.

## IV.

For these reasons, we AFFIRM the district court's grant of summary judgment.