Kenneth M. **BOUDREAUX**
and William J. Nolan

v.

**BANCTEC, INC.**

No. Civ.A. 03–2111.

United States District Court,
E.D. Louisiana.

Feb. 22, 2005.

Edward K. Newman, Karen Maria Torre, Robein, Urann & Lurye, Metairie, LA, for Plaintiffs.

## ORDER AND REASONS

BERRIGAN, District Judge.

Before the Court are cross-motions for Partial Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the following reasons, both motions are DENIED.

### Background

Kenneth M. Boudreaux and William J. Nolan (collectively "Plaintiffs") worked for Banctec, Inc. ("Defendant") as computer repair technicians ("CRT"). Defendant assigns computer-repair work, or "service calls," to its various CRTs who work out of

their home offices. Before leaving their home for a service call, a CRT must perform, as Plaintiffs call them, "administrative duties." According to Plaintiffs, these are time-consuming duties that include the daily receipt and review of emails containing the days assignments, organizing the assignments into an efficient route, and then calling the computer owners to make an appointment. (Rec.doc. 45, p. 2–3). CRTs are also required to track parts as they are being shipped and pick them up from courier services, update service calls based on the availability of parts, and match parts with the proper service call. (Rec.doc. 45, p. 3). Finally, after the last service call of the day, CRTs must close and update service calls with the Banctec base operator, box parts and fill out accompanying paperwork, and respond to after hour service calls from customers. (Rec.doc. 45, p. 4).

Boudreaux began working for defendant in September, 2001. From September until December, 2001, Boudreaux worked as a CRT under a Temporary Employee Agreement. (Rec. doc. 46, memorandum p. 2). Under this agreement, Boudreaux was an employee of Defendant and compensated by the service call rather than hourly. (Id.).

In June, 2001, Defendant's CEO and CFO questioned why the company did not classify its technicians as independent contractors. (Rec.doc. 45, p. 5). Defendant's inside-counsel, Richard McDonough, sought an opinion from outside-counsel, Stuart B. Johnston, Jr. of Vinson & Elkins, Johnson relied on information provided by Defendant's Director of Human Resources, Cindy MacFarlane, to prepare an opinion letter. (Id.). Johnston concluded that the technicians could be classified as independent contractors.

Relying in part on Johnston's opinion letter, in December, 2001, Defendant asked its CRTs to enter contracts as independent contractors. Under the Independent Contractor Agreement, Defendant claims, technicians were entitled to turn down service calls, and were only required to accept one service call per month. (Rec.doc. 46, memorandum, p. 3–4). Independent contractors continued to be paid by service call.

In August, 2002, Boudreaux formed his own company, PC Physicians. According to tax returns, PC Physicians reported deductions of $43,806 on 2002 federal tax records.

In May, 2003, Defendant cancelled its independent contractor arrangement. Technicians once again become employees, and went by the new title "Incentive Based Technician" ("IBT"). This change followed a November, 2002 determination by the IRS that a Banctec technician in Oregon was not an independent contractor and was to be treated as an employee. (Rec. doc. 45, p. 7). Job duties remained the same, and IBTs continued to be paid by service call. By this point, Boudreaux had for some time been complaining to his superiors, John Croft and Rick Neff, about the method of compensation. Boudreaux felt he should be getting paid for the time spent performing "administrative duties," and also, because he otherwise had been working full weeks, that the "administrative time" should go towards the computation for overtime.

On July 1, 2003, a tropical had downed trees and flooded the streets by Boudreaux's home, allegedly preventing him from performing service calls. When a customer returned a call to schedule an appointment, Boudreaux explained that he could not leave his neighborhood, but that even if he could he would not perform the service call that day because it would be his only one. In his eyes, if he were to run the call he would be paid at a rate less

than minimum wage for his hours worked because he was not being paid for "administrative work." (Rec.doc. 45, p. 15). The customer complained to Boudreaux's boss, John Croft, as well as Croft's boss, Rick Neff, the District Manager. Both then spoke to Boudreaux and directed him to perform the service call. Boudreaux reiterated his complaints about the compensation arrangement and made it clear that even if he could leave his house, he would not do so just to run one service call. Neff then fired Boudreaux for insubordination.

Willard Nolan began working for Defendant in 1997. He was a Customer Engineer, paid hourly for 40 hours a week, until he was reclassified as an IBT on April 15, 2003. At all times Nolan was an employee of Defendant, he did not take part in Defendant's short-lived independent contractor arrangement. Prior to April 15, 2003, as a Customer Engineer, Nolan was told to report 40 hours a week on his time sheets and to put in for overtime when applicable. (Rec. doc. 46, memorandum p. 7). He did not count "administrative time" on his time sheet, his lunch hour which he now claims to have worked through it each day, travel time from his last job site to his home, the time spent boxing up parts, or the time spent to close service calls. (Rec.doc. 46, memorandum, p. 7–8). Nolan now claims that he should be compensated for such time, and the time should factor into overtime calculations.

*Standard of Review*

A district court can grant a motion for summary judgment only when the " 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.,* 784 F.2d 577, 578 (5th Cir.1986). The court must find "that a reasonable jury could return a verdict for the nonmoving party ... [and a] fact ... [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.,* 882 F.2d 993, 996 (5th Cir.1989) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake,* 47 F.3d 1459, 1462 (5th Cir.1995) (citing *Celotex,* 477 U.S. at 322–24, 106 S.Ct. at 2552–53, 91 L.Ed.2d 265 and Fed.R.Civ.P. 56(e)). The mere argued existence of a factual dispute will not defeat an otherwise properly supported motion. *See Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510, 91 L.Ed.2d 202. "If the evidence is merely colorable, or it is significantly probative, 'summary judgement is not appropriate.' " *Id.,* at 249–50, 106 S.Ct. at 2511, 91 L.Ed.2d 202 (citations omitted).

**I. Plaintiff's Motion for Partial Summary Judgment**

The Court will first address Plaintiffs's motion for partial summary judgment before turning to Defendant's motion.

*Compensation for Work Time*

Plaintiffs each claim that the time spent doing "administrative work," traveling, working through lunch, and preparing and taking the Dell certification exam is com-

pensable time for which Defendant has not paid them. Plaintiffs further argue that Boudreaux was always an employee and never an independent contractor. Plaintiffs further allege the Defendant has violated the Fair Labor Standards Act (FLSA) willfully and in bad faith. Finally, Plaintiffs argue that the Court should accept Plaintiffs's compensation calculations as reasonable and award Nolan $57,042.34 in unpaid overtime and an equal amount in liquidated damages and Boudreaux $15,104.27 in unpaid overtime and an equal amount in liquidated damages, and Defendant owes Plaintiffs reasonable attorney's fees. (Rec.doc. 46, p. 1–2).

### 1. Administrative Duties

 Plaintiffs claim that the FLSA requires employers to compensate employees for all the time which the employer requires or permits employees to work (Rec.doc. 45, p. 21), *See Tenn. Coal, Iron, & R.R. Co. v. Muscoder Local No., 123,* 321 U.S. 590, 598, 64 S.Ct. 698, 88 L.Ed. 949 (1944). Any work from which the employer derives a significant benefit or that is an integral and indispensable part of the principal activities for which covered workmen are employed is compensable, even if done outside of the regular work shift. *See Steiner v. Mitchell,* 350 U.S. 247, 256, 76 S.Ct. 330, 335, 100 L.Ed. 267, 273 (1956). The Fifth Circuit has defined "integral and indispensable" activity as that which is necessary to the principal work performed and done for the benefit of the employer. *See Barrentine v. Arkansas–Best Freight Sys., Inc.,* 750 F.2d 47, 50 (5th Cir.1984), *cert. denied,* 471 U.S. 1054, 105 S.Ct. 2116, 85 L.Ed.2d 480. However, "preliminary" activity, such as waiting to check in and out of work, turning on machinery, or waiting in line to receive checks, is non-compensable. *See Anderson v. Mt. Clemens Pottery Compa-*

*ny,* 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946).

Plaintiffs claim that the instant case is factually similar to *Dunlop v. City Electric, Inc.,* 527 F.2d 394 (5th Cir.1976). In *Dunlop,* the Fifth Circuit deemed activities performed by electricians before their 8:00 a.m. start time, such as filling out daily time, material and requisition sheets, checking job locations for the day, and preparing for that day's job, to be compensable "principal activities." *Id.* at 401. *Dunlop* broadly defines compensable principal activities as those that are "performed as part of the regular work of the employees in the ordinary course of business" and "performed at the employer's behest and for the benefit of the business." *Id.*

Defendant counters that the notion of "administrative time" is vague, as is the distinction between preliminary activities and principal activities. It cites *Carter v. Panama Canal Co.* and *Vega v. Gasper* to show that time spent receiving assignments is not necessarily compensable under the FLSA. In *Carter,* the Court of Appeals for the D.C. Circuit held that checking assignments was a preliminary activity under the Portal–to–Portal Act.

> The "principal activity" of the appellants is the operation of the towing locomotives and the "actual place of performance" of this activity is the locomotive itself. Checking the assignments on the board is an activity "preliminary to" that "principal activity" and the daily walk to the locomotive certainly constitutes "walking ... to ... the actual place of performance of the principal activity." In addition, there is neither "an express provision of a written or nonwritten contract in effect," nor "a custom or practice in effect" under which the operators were being paid for these activities. Accordingly, we find that if the Canal Com-

pany were a private employer subjected to the FLSA, the Portal–to–Portal Act would block the locomotive operators' attempt to recover overtime compensation for the time spent in checking the assignment board and walking to the locomotives prior to the commencement of their "principal activity" in operating the locomotives.

463 F.2d 1289, 1294 (D.C.Cir.1972). In *Vega*, while workers rode a bus to the fields they were told in which field they would work and what the pay rate would be. The Fifth Circuit held that "merely receiving this information is not enough instruction from Gasper to render the time compensable." 36 F.3d 417, 425 (5th Cir. 1994).

■ The Court finds that *Dunlop* is the controlling precedent in the Fifth Circuit about administrative time. *Vega*, by contrast, is distinguishable because it is primarily a case about travel time, not administrative time. Accordingly, "principal activities" must be interpreted broadly, pursuant to *Dunlop*, as opposed to the more narrow interpretations used by other circuits. The Court finds that some of the "administrative activities" Plaintiffs claim to have performed are not preliminary activities. Preliminary activities, as cited in *Dunlop*, include checking in or out and waiting in line to do so, changing clothes, washing up or showering, putting on aprons or overalls, removing shirts, taping arms, and turning on switches for lights. *Dunlop*, 527 F.2d at 399, *citing* S.Rep.No. 48, 80th Cong., 1st Sess. p. 47 (1947), *Anderson v. Mt. Clemens Pottery Company*, 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946). Rather, some of the activities Plaintiffs allegedly were performing could be considered "integral and indispensable"

activities akin to those performed by the electricians in *Dunlop*. *Dunlop*, 527 F.2d at 400. As in *Dunlop*, Plaintiffs were, if factually correct, doing the tasks necessary to prepare for service calls. *See Id.*, at 397 ("These duties were to be completed before 8:00 a.m. to enable the men to depart from the shop by the beginning of their paid workday.").

■ However, there remains a genuine issue of material fact as to which of the activities for which Plaintiffs seek compensation are actually principal activities. For example, there is a question as to whether boxing up parts at home after a service call is a principal activity or merely non-compensable *de minimus* tasks. (Rec.doc. 46, p. 24), *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946). Accordingly, the jury will need to hear and decide which "administrative duties" are compensable principal activities, based on the disputed evidence to be presented.

### 2. Travel time

■ Plaintiffs argue that the time spent traveling to and from home is compensable under the FLSA. (Rec.doc. 45, p. 23). Defendant points out that "ordinary home-to-work travel is clearly not compensable under the Portal–to–Portal Act unless a contract or custom of compensation exists between the employer and the employees".[1] (Rec.doc. 48, p. 4), *See* 29 C.F.R. §§ 785.34–35, 790.8(b). With regard to driving to and from home, Plaintiffs essentially argue that the administrative duties performed at home both before and after work make the home a home office, and thus the trips from home to a service call and back is not ordinary home-to-work-

---

1. Defendants argue the issue of travel time both in its opposition to Plaintiff's motion (Rec.doc. 48) and its own Motion for Summary Judgment (Rec.doc. 46), as well as its Reply to Plaintiff's opposition (Rec.doc. 53).

travel. They cite a Fifth Circuit case involving truck drivers who were compensated for their time spent returning to the truckyard from their last job site, and for the post-travel cleaning and refueling the trucks at the yard. *Mitchell v. Mitchell Truck Line, Inc.*, 286 F.2d 721 (5th Cir. 1961). Plaintiffs also cite a case in which police officers were compensated for travel time from home to work when carrying their police dogs that were boarded at their homes. *Graham v. City of Chicago*, 828 F.Supp. 576 (N.D.Ill.1993). Also, whether such travel time is compensable depends on whether a principal activity is being performed at home. Accordingly, for the reasons stated already, the Court finds a genuine issue of material fact as to whether principal activity took place at home which would allow travel time from home to be compensable in the instant matter. With regard to time spent traveling between service calls, the Court finds that whether such time is compensable is also a genuine issue of material fact due to the lack of supporting legal precedent.

### 3. Lunch Time

 Plaintiffs each claim that they regularly worked through lunch and were not able to record that time on their time sheets. Lunch time can be compensable so long as it is not a "bona fide meal period." 29 C.F.R. § 785.19. The Code of Federal Regulations provides that an employee "must be completely relieved from duty for the purpose of eating meals" during a bona fide meal period. *Id.* The Fifth Circuit has determined this using a "predominant benefit test." *Bernard v. IBP, Inc. of Nebraska*, 154 F.3d 259, 264 (1998). "The critical question is whether the meal period is used predominantly or primarily for the benefit of the employer or for the benefit of the employee. The employer bears the burden to show that meal time qualifies for this exception from compensa-

tion" *Id.* at 264–65 (citations omitted). The Court questions whether the facts in the instant matter are analogous to *Bernard*, however. Whether meal time is predominantly for the benefit of the employer presupposes that there is an identifiable mealtime. In *Bernard*, the plaintiffs were members of a Teamsters union who were allowed one thirty minute meal break during each shift. *Id.* at 262. Here, unlike *Bernard*, we are not dealing with a particular meal period; Plaintiffs would take lunch whenever the opportunity arose. If they opted to skip lunch and work or eat while doing job duties, it is compensable. If they put work aside to eat lunch, it is not. These are disputed issues of material facts.

### 4. Time Preparing for and Taking Dell Certification Exams

 Plaintiffs claim that time spent in training programs and preparing for post-training certification exams must be counted as time worked and compensated accordingly. (Rec.doc. 45, p. 25). Defendant provides a deposition from John Croft, the Field Service Supervisor, that says employees of Banctec *were* allowed to bill for the time spent on conference calls and training. Due to these conflicting accounts, the Court finds that this remains a genuine issue of material fact.

### 5. Estimates of Time

 Plaintiffs assert that each has calculated a reasonable estimate of the time spent doing the aforementioned activities. These clearly constitute issues of fact for the jury to determine.

### Independent Contractor

Boudreaux claims that he was an employee at all times while working with Defendant, and therefore was at all times

covered by the FLSA and subject to the FLSA overtime provision. (Rec.doc. 45, p. 27), see 29 U.S.C. § 207(a). Defendant, by contrast, asserts that Boudreaux was not covered by the FLSA while classified as an independent contractor from December, 2001 to May, 2003.

 Whether a worker is covered by the FLSA is not as simple as whether he fits under the common law concepts of "employee" or "independent contractor." See W.J. Usery v. Pilgrim Equipment Company, Inc., 527 F.2d 1308, 1311 (1976) ("The common law concepts of 'employee' and independent contractor' have been specifically rejected as determinants of who is protected by the Act."). For the purposes of the FLSA, an "employee" is determined by whether, "as a matter of economic reality, (they) are dependent upon the business to which they render service." Id. The factors to consider in determining economic dependence are 1) degree of control; 2) opportunities for profit or loss; 3) investment in facilities; 4) permanency of relation; and 5) skill required. Id. "None of these considerations can become the final determinant, nor can the collective answers to all of the inquiries produce a resolution which submerges consideration of the dominant factor—economic dependence." Id.

### 1. Degree of Control

 Plaintiffs assert that Defendant exerted significant control over their daily routine. For example, in Boudreaux's case, Defendant allegedly set all service calls, required that they be done according to "detailed procedures" (Rec.doc. 45, p. 27), required Boudreaux to account for all of his travel time, time on site, and mileage, and also required Boudreaux to complete all Banctec assignments before he could do any outside work. Defendant counters that the Independent Contractor

Agreement specifically stated that the contractor has "the freedom of accepting or rejecting assignments under [the] Agreement and determining the specific manner in which the services are provided under [the] Agreement." (Rec.doc. 46, Ex. 2, ¶ 9). Accordingly, the Court finds that the amount of control exerted over Boudreaux is a genuine issue of material fact.

### 2. Opportunities for Profit or Loss

 Boudreaux claims that Defendant had the bigger opportunity for profit or loss because Defendant was the one who set the charges and fees. (Rec.doc. 45, p. 27). Defendant argues that Boudreaux had the opportunity to accept or reject service calls, which would determine his daily income. (Rec.doc. 46, p. 15). As noted above, Boudreaux disputes that he had the ability to turn down service calls. Defendant also asserts that Boudreaux had the ability to organize his daily route of service calls in the most efficient manner, thereby enabling him to be more productive and make more money. Boudreaux counters that Defendant required him to organize the most efficient routes, and in fact "audited to ensure such compliance." (Rec.doc. 47, p. 9). Given these unresolved disputes, the Court finds that the question of who had the greater opportunity for profit or loss remains a genuine issue of material fact.

### 3. Investment in Facilities

 Boudreaux notes that he had to buy some "minor" tools of his own, but this was also the case at the times Defendant classified him as an employee. (Rec.doc. 45, p. 27–28). Similarly, Defendant has not adequately demonstrated that the investments Boudreaux made when classified as an independent contractor were any different that those made by BenTec technicians classified as employees, or by

Boudreaux himself when he was classified as an employee.

### 4. Permanency of Relation

■ Defendant argues its relationship with Boudreaux was indicative of an independent contractor because either party could terminate the Independent Contractor Agreement at will and because many of the technicians who participated in the independent contractor program were transitory. The Court notes that, generally, employees also work at will and can terminate their relationship any time. Boudreaux argues that the permanency of relationship consideration is actually a question of economic relationship rather than temporal one, though Boudreaux offers no support for this interpretation. Neither side has persuaded the Court that the permanency of Boudreaux's relationship with Defendant indicates either that he is an independent contractor or an employee while participating in the independent contractor program.

### 5. Skill Required

Given the fact that Boudreaux was classified first as an employee, then as an independent contractor, then again as an employee, all apparently without any change in duties or skills, the Court finds that this factor does not weigh in favor of finding that Boudreaux was an independent contractor.

Though the factor of skill required cuts toward finding that Boudreaux was an employee of Banctec even when classified as an independent contractor, this factor is not conclusive, and genuine issues of material fact in other factors prevent the Court

from making a determination at this time. For example, whether Boudreaux really had the ability to decline service calls and whether he had a genuine ability to make decisions that would increase his own profit margins are questions that remain unresolved. Accordingly, the Court cannot conclude that Boudreaux was an independent contractor when he was classified as such, nor can it conclude that he was not. In other words, the real issue—whether Boudreaux was economically independent—remains unproven.

### Good Faith

■ Section 216(b) of the FLSA provides that "any employer who violates the provisions of section 206 or 207 of this title shall be held liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Liquidated damages in an amount equal to the unpaid wages due *must* be awarded unless the trial court finds that the acts of the employer giving rise to the suit were both in good faith and reasonable. *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407 (5th Cir.1990). Plaintiffs argue that Defendant did not act in good faith when it prevented them from reporting various hours spent working which would have amounted to overtime. "In this case, Banctec knew that its actions were governed by the Act prior to contacting outside counsel.[2] Banctec had deemed full-time regular employees, like Nolan, eligible for overtime. Further, Vinson & Elkins' opinion letter explicitly referred to the FLSA. Further, Banctec knew that

---

**2.** Johnston wrote in his opinion letter, "if it is determined that Flex Techs are employees rather than independent contractors, the company could be liable, under various employment related law. For example this

change may subject Banctec to liability for (I) failure to pay minimum wages or overtime (in addition to liquidated damages ...) under the Fair Labor Standards Act."

Plaintiffs were working hours for which they were not being compensated." (Rec. doc. 45, p. 30). Plaintiffs further allege that Defendant knowingly, and in bad faith, provided false and misleading information to Mr. Johnston of Vinson & Elkins about the Flex Tech program. (Rec.doc. 45, pp. 5, 30). The Court finds that Johnston's opinion letter provides evidence that Defendant was aware or had reason to know of the FLSA provisions, at least after receiving Johnston's opinion letter. However, Plaintiffs's allegations that Defendant lacked good faith in believing the FLSA to be inapplicable are unsubstantiated and argumentative. Defendant's actual knowledge and its reasonableness remains a genuine issue of material fact.

Having considered all of the arguments put forth by Plaintiffs both individually and collectively, the Court finds that their motion for partial summary judgment must be denied. Accordingly, a determination regarding attorney's fees is not appropriate. The Court now turns to the arguments put forth by Defendant in its motion for partial summary judgment.

## II. Defendant's Motion for Partial Summary Judgment

Defendant claims in its motion for partial summary judgment that 1) Boudreaux cannot make a prima facie case of retaliation under the FSLA; 2) it had a legitimate nondiscriminatory reason for terminating Boudreaux; 3) Boudreaux cannot demonstrate pretext; 4) Boudreaux was not covered by the FLSA while he was an independent contractor; 5) Plaintiffs are estopped from claiming overtime wages; 6) Plaintiffs's travel to and from home is noncompensable; 7) Plaintiffs's lunchtime is noncompensable; and 8) time spent boxing up parts at home is not compensable.

The Court has already addressed arguments four, six, and seven in course of

considering Plaintiffs's motion for partial summary judgment. To reiterate, for the reasons stated above, there remains a genuine issue of material fact as to whether Boudreaux could properly be considered an independent contractor even though he was temporarily classified as such, and whether Plaintiffs's travel time and lunch time is compensable. Just as the Court cannot grant summary judgment in favor of the Plaintiffs on these issues, it cannot grant summary judgment in favor of Defendant.

### Prima Facie Case of Retaliation

■ The FLSA provides, in pertinent part, that it shall be unlawful for any person:

to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceedings under or related to this chapter, or he has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

29 U.S.C. § 215(a)(3). Claims of retaliatory discharge are analyzed using a burden shifting framework. *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir.1998). Thus, Boudreaux must make a *prima facie* case of retaliation before the burden can shift to Defendant. To make a *prima facie* case, Boudreaux must demonstrate 1) that he engaged in a protected activity, 2) an employment action that disadvantaged him, and 3) a causal connection between the protected activity and the adverse employment action. *Holt v. JTM Indus., Inc.*, 89 F.3d 1224, 1225–26 (5th Cir.1996). Defendant concedes that Boudreaux was subject to an adverse employment action, but contends that he never engaged in a protected activity, and even if he did, there was no causal connection

between his complaints and his termination.

Protected activity consists of filing an official complaint, instituting a proceeding, testifying in a proceeding, or serving on an industry committee. 29 U.S.C. § 215(a)(3). Defendant argues that Boudreaux, though he complained repeatedly to his bosses, never even filed an official complaint, and therefore did not engage in protected activity. Defendant notes two cases, *Dronet* and *Booth*, in which this Court has held that making informal complaints to company officials does not rise to the level of protected activity under the FLSA. *Dronet v. LaFarge Corp.*, No. 00–2656, 2001 WL 699384, 2001 U.S. Dist. LEXIS 8565 (E.D.La. June 19, 2001) (Clement) (plaintiff did not engage in protected activity under FLSA even though he lodged verbal complaints over the last two years of his employment, wrote a letter to his supervisor, and contacted an unspecified governmental agency to inquire about how vacation pay should be calculated); *Booth v. Intertrans Corp.*, No. 94–2359, 1995 WL 324631, 1995 U.S. Dist. LEXIS 7593 (E.D.La. May 26, 1995) (Vance) (informal complaints to company officials do not constitute protected activity). Boudreaux's complaints, Defendant argues, were similarly informal and thus not protected activity.

Bourdeaux does not dispute that he did not file a formal complaint, institute a proceeding, or testify, nor does he dispute Defendant's characterizations of *Dronet* and *Booth*. Rather, Boudreaux asserts that *Dronet* and *Booth*, are "contrary to the remedial purposes of the Act and are not binding on this Court." (Rec.doc. 47, p. 6). As district court cases, *Dronet* and *Booth* are not binding authority. They are persuasive authority, as are the numerous cases cited from other district courts and circuit courts which embrace a broader interpretation of the FLSA and do allow for the possibility that unofficial complaints can be protected activity. (Rec. doc. 47, p. 3, footnote 16). The parties do not provide, nor is the Court aware, of any binding authority from the Fifth Circuit on whether the narrow interpretation of the statute used in *Dronet* and *Booth* is appropriate, or instead use of a broader interpretation that would apply the FLSA's anti-retaliatory provisions in situation where employees simply make unofficial complaints.

■ Given the lack of binding authority and conflicting persuasive authority, the Court finds that it will adopt a broader interpretation of "protected activities." The Court agrees with the rationale of Eleventh Circuit Court of Appeals, which held in *Equal Employment Opportunity Commission v. White and Son Enterprises* that

> The FLSA in general is remedial in purpose (citations omitted) ... Congress sought to secure compliance with the substantive provisions of the labor statute by having 'employees seeking to vindicate rights claimed to have been denied' lodge complaints or supply information to officials regarding allegedly substandard employment practices and conditions. *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960). The anti-retaliation provision of the FLSA was designed to prevent fear of economic retaliation by an employer against an employee who choose to voice such a grievance. *Id.* By giving a broad construction to the anti-retaliation provision to include the form of protest engaged in here by the charging parties, its purpose will be further promoted. (citations omitted).

881 F.2d 1006, 1011 (1989). Pursuant to this interpretation, the Court finds that

Boudreaux's repeated informal complaints to Banctec officers can be considered protected activity under the statute.

Defendant argues that there is no causal connection between Boudreaux's protected activity of expressing his grievances to his bosses and his termination. The facts indicate that Boudreaux was fired while having a conversation with Rick Neff during which, among other things, he reiterated his complaints about his compensation structure. This was not long after Boudreaux allegedly told Neff he had complained to the Louisiana Department of Labor. The Court finds that a reasonable jury could determine that Boudreaux's termination was causally connected to the complaints expressed in these conversations. Therefore summary judgment in favor of Defendant on the question of whether Boudreaux's termination was causally connected to his protected activities is inappropriate.

*Burden Shifting*

Should Boudreaux be able to establish a prima facie case at trial, the burden would shift to Defendant to provide a legitimate, non-discriminatory reason for Boudreaux's termination. The burden would then shift back to Boudreaux to show that Defendant's non-discriminatory reason is merely a pretext. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The Court finds there is a dispute as to whether Boudreaux was fired for insubordination or for complaining that he was not being compensated fairly. A reasonable jury could disagree on whether Defendant's reason for firing Boudreaux is believable or simply a pretext. Again, summary judgment is not proper at this time.

*Estoppel*

Defendant next claims that Plaintiff Nolan is estopped from alleging

that he was not paid overtime. (Rec.doc. 46, p. 18–19). In order to recover for a violation of the FLSA, Nolan must show that he was "employed" in the sense used in the FLSA for the periods of time for which he claims overtime. *Newton v. City of Henderson,* 47 F.3d 746, 748 (5th Cir. 1995). A worker is employed during those hours if the employer has knowledge, actual or constructive, that he was working. *Id.* Defendant claims that Nolan is estopped from claiming overtime now because he never reported the hours he is now claiming, never complained, and thus Defendant had no actual or constructive knowledge that he was working. The facts reveal that Boudreaux and other technicians, though apparently not Nolan, repeatedly complained to Croft about not being compensated for "administrative time." According to Boudreaux, Croft told him that technicians are not compensated for such time because "it was part of the job." (Rec.doc. 45, p. 11). A reasonable juror could conclude, the Court finds, that these occurrences put Croft on constructive notice that those technicians who performed service calls, including Nolan, were working additional hours that could be construed as either overtime or "just part of the job." Accordingly, there remains a genuine issue of material fact.

*Time Spent Boxing up Parts at Home*

Finally, Defendant asks the Court to decide on summary judgment that the time spent boxing up parts at home is *de minimus* and therefore not compensable. (Rec.doc. 46, p. 24). The United States Supreme Court has recognized a *de minimus* rule in FLSA cases. *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 692, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946). It held that "it is only when an employee is required to give up a substan-

tial measure of his time and effort that compensable working time is involved." *Id.* By contrast, "when the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded." *Id.* The Court finds that the evidence does not provide a clear, undisputed picture of the steps involved in boxing and recording parts, how much total time was spent on this process, and how regularly this process took place. Therefore the Court cannot determine at this time that the time spent boxing parts was *de minimus.*

## Conclusion

The Court finds that genuine issues of material facts remain as to all issues brought by Plaintiffs and Defendant in their motions for partial summary judgment.

Accordingly,

**IT IS ORDERED** that Plaintiffs's Motion for Partial Summary Judgment is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Partial Summary Judgment is DENIED.