**Eric BUZEK, Plaintiff,**

v.

**The PEPSI BOTTLING GROUP, INC. et al., Defendants.**

**Civil Action No. H–06–2032.**

United States District Court, S.D. Texas, Houston Division.

May 11, 2007.

G. Scott Fiddler, Attorney at Law, Houston, TX, for Plaintiff.

G. Mark Jodon, Littler Mendelson, Houston, TX, Guy N. Halgren, Attorney at Law, Julie A. Dunne, Matthew S. Dente, Samantha D. Hardy, Sheppard Mullin Richter And Hampton LLP, San Diego, CA, for Defendants.

## MEMORANDUM AND RECOMMENDATION

SMITH, United States Magistrate Judge.

This case presents an interesting issue of first impression in this circuit concerning the Employee Commuting Flexibility Act ("ECFA"), a 1996 amendment to the Portalto–Portal Act of 1947. 29 U.S.C. § 254(a). Plaintiff Eric Buzek claims that the Portal–to–Portal Act entitles him to compensation for time spent driving home from his last service call of the day, because transporting tools and making end-of-day reports from home are principal activities of his job. His employer, The Pepsi Bottling Group, responds that ECFA exempts such activities because they are "incidental to" the use of a company vehicle for commuting.

Cross motions for summary judgment (Dkts.30, 43) regarding defendants' liability under the Fair Labor Standards Act ("FLSA") have been filed, thoroughly briefed, and vigorously argued to the court. Convinced that ECFA renders the activities at issue non-compensable under the FLSA, the court recommends that defendants' motion be GRANTED and plaintiff's motion be DENIED.[1]

## I. Background

Eric Buzek, a field service technician for defendant The Pepsi Bottling Group ("PBG"), drives from site to site repairing and servicing ice machines, vending machines, and fountain equipment for PBG customers. In 1994, PBG implemented a home-based program requiring Buzek to take home the company vehicle used for field service calls. Buzek signed an agreement stating that he is not permitted to drive the vehicle for personal reasons and is required to drive directly to the first job site and directly home from the last job site. Buzek also transports necessary tools and parts in the vehicle to make the service calls.[2]

To report information about his field service calls, Buzek uses a company provided hand-held computer called an e-pad. The e-pad is used to record information throughout the day for the service calls including the time taken to drive to each job site, how long the technician works at each job site, the parts used in service, and the service provided. At the end of each day, Buzek makes a call from his home to his supervisor to report the last service call. He then plugs his e-pad into the telephone line so that it can upload and download information about his service calls to PBG. At this point, Buzek can walk away from the device as it automatically transmits the information. After the e-pad finishes communicating with PBG, Buzek unplugs his e-pad from the phone line and plugs it into a charger. Buzek estimates that he spends eight to ten minutes on his end-of-day communication, while PBG estimates that Buzek routinely spends about two minutes. Buzek's esti-

1. These dispositive motions have been referred to this magistrate judge for report and recommendation. (Dkt.29). In light of the recommended disposition of those motions, the court further recommends that Plaintiff's Motion to Strike Defendants' Counterclaims be dismissed as moot. (Dkt.45).

2. Eric Buzek Deposition, at 80, 82, 96; Eric Buzek Declaration ¶ 3, 4, 6, 9.

mate, however, includes time spent if the equipment malfunctions (i.e. his printer battery dies in the field or his call rings a few times rather than going straight to voice mail), which happens only sporadically. PBG's estimate assumes that Buzek's equipment functions properly.[3]

## II. Legal Standards

### A. Summary Judgment

Summary judgment is appropriate if no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel,* 274 F.3d 984, 991 (5th Cir.2001). Dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the nonmoving party. *In re Segerstrom,* 247 F.3d 218, 223 (5th Cir.2001). "An issue is material if its resolution could affect the outcome of the action." *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.,* 290 F.3d 303, 310 (5th Cir.2002). The movant need not introduce evidence to negate the opponent's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In this case each side contends that, based on undisputed facts in the summary judgment record, it is entitled to summary judgment as a matter of law. When both parties move for summary judgment, each party must carry its own burden as the movant for its motion and as the nonmovant in response to the other party's motion. *Shaw Constructors v. ICF Kaiser Engineers, Inc.,* 395 F.3d 533, 538–39 (5th Cir.2004). Summary judgment may be particularly appropriate when the questions to be decided are issues of law, such as statutory interpretation. *See, e.g., Ed-*

*wards v. Aguillard,* 482 U.S. 578, 595–96, 107 S.Ct. 2573, 96 L.Ed.2d 510 (1987).

### B. The Fair Labor Standards Act

The purpose of the FLSA is to ensure that employees are paid for all hours worked in a given workweek, including overtime hours. 29 U.S.C. §§ 206, 207; *see Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123,* 321 U.S. 590, 602, 64 S.Ct. 698, 88 L.Ed. 949 (1944). As enacted in 1938, the FLSA did not define the terms "work" or "workweek." Early Supreme Court decisions broadly construed those terms, holding for example that factory workers must be paid for time necessarily spent walking from time clocks near the entrance gate to their workstations. *See Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 691–92, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946). Concerned that these judicial interpretations of the FLSA were "creating wholly unexpected liabilities,"[4] Congress in 1947 passed the Portal–to–Portal Act, amending certain provisions of the FLSA.

### C. The Portal-to Portal Act

The Portal–to–Portal Act narrowed the coverage of the FLSA by excepting two activities that had been treated as compensable under prior case law: (1) walking, riding, or traveling to and from the actual place of performance of the principal activity of the employee; and (2) activities which are "preliminary to or postliminary to" that principal activity. 29 U.S.C. § 254(a). The statute does not define "principal activity." In *Steiner v. Mitchell,* 350 U.S. 247, 252–53, 76 S.Ct. 330, 100 L.Ed. 267 (1956) the Supreme Court held activities which are "integral and indispensable" to an employee's principal activities are also compensable and not excluded

---

3. Buzek Dep. at 20–23; Buzek Decl. ¶ 7, 10, 11.

4. 61 Stat. 84 (1947).

under the Portal–to–Portal Act. *See also Dunlop v. City Elec., Inc.*, 527 F.2d 394, 401 (5th Cir.1976) (test for "principal activity" is whether the "work is necessary to the business and is performed by the employees, primarily for the benefit of the employer, in the ordinary course of that business").

A regulation issued by the Secretary of Labor shortly after enactment concluded that the statute had no effect on the computation of hours worked "within" the workday. 29 C.F.R. § 790.6(a). Under the "continuous workday rule," the compensable workday is defined as "the period between the commencement and completion on the same workday of an employee's principal activity or activities." 29 C.F.R. § 790.6(b). The validity of this rule was recently reaffirmed by the Supreme Court in *IBP, Inc. v. Alvarez*, 546 U.S. 21, 126 S.Ct. 514, 521, 163 L.Ed.2d 288 (2005).

### D. The Employee Commuting Flexibility Act

The stated purpose of ECFA was "to amend the Portal–to–Portal Act of 1947 relating to the payment of wages to employees who use employer-provided vehicles" for commuting. *See* H.R. Rep. 104–585, at p. 2. The need to clarify this issue arose from conflicting DOL opinion letters issued in 1994 and 1995. The August 1994 opinion letter ruled that time spent by an employee traveling from home to the first work assignment, or returning home from the last assignment, was similar to that of traveling between jobs during the day, and therefore constituted a principal activity which must be compensated. No compensation would be required where employees used their own personal vehicles, however. In response to employer concerns, the DOL issued a revised opinion letter in April 1995, withdrawing the earlier opinion letter and modifying its position. Under the new opinion letter, commuting time in a company-provided vehicle need not be compensated under the following conditions: (1) commuting in the vehicle is strictly voluntary and not a condition of employment; (2) the vehicle is the type normally used for commuting; (3) employees incur no costs for driving the employer's vehicle; and (4) the work sites are within the normal commuting area for that employer.

Dissatisfied, Congress responded to the DOL's inconsistency by passing ECFA. This act added the following language to section 4 of the Portal–to–Portal Act:

> For purposes of this subsection, the use of an employer's vehicle for travel by an employee and *activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities* if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

29 U.S.C. § 254(a) (emphasis supplied).

The effect of ECFA is to carve out, from the realm of generally compensable time, two types of employee activity pertaining to commuting in a company vehicle: (1) travel and (2) incidental activities. Although the term "travel" was already part of the original Portal–to–Portal Act, the category of "incidental activities" is new. In fact, the word "incidental" was not previously found in the Portal–to–Portal Act. Instead, that Act referred to activities "preliminary to or postliminary to" principal activities. 29 U.S.C. § 254(a)(2). The significance of this different phrasing will be addressed below.

### III. Analysis

■■■ This dispute resolves to a question of statutory interpretation—whether

transportation of tools and end-of-day reports are "incidental to" the use of a company vehicle for commuting, and hence non-compensable under ECFA. It is of course a truism that statutory construction begins with the "ordinary, contemporary, common meaning" of the words of the statute. *Williams v. Taylor*, 529 U.S. 420, 432, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000). Resort to legislative history is permitted only if the language is unclear or ambiguous. *Free v. Abbott Laboratories*, 51 F.3d 524, 528 (5th Cir.1995).

## A. Text, Plain Meaning, and Dictionaries

Buzek leans most heavily upon what he argues is the plain and unambiguous meaning of the statutory phrase *incidental to*. Buzek contends that the phrase goes beyond mere "relatedness," as PBG would have it; rather, the word *incidental* "captures both the concept of *causality* and *necessity*," [5] and is synonymous with "necessarily required." From this premise, Buzek argues that his activities must be compensable because they are not necessarily required for commuting in a company vehicle; rather they are "required" only in the sense that PBG has chosen to structure its program in that way.

Buzek relies upon two separate dictionaries in support of his restrictive definition of *incidental*. Unfortunately for him, neither dictionary (nor any other consulted

by this court) [6] bears out his premise. The first dictionary cited is *Dictionary.com Unabridged*, which gives three definitions for the adjective "incidental":

> 1. happening or likely to happen in an unplanned or subordinate conjunction with something else. 2. incurred casually and in addition to the regular or main amount: *incidental expenses*. 3. likely to happen or naturally appertaining.

None of these definitions denotes a relationship of necessity or causality, contrary to Buzek's claim. [7] To say that activity X is likely to happen in connection with activity P does not imply that P necessarily caused X. While sitting on my back porch in the evening (P), I may often be able to watch the sun go down (X), but the sunset is not caused by my evening routine. Viewing the sunset is merely an incidental (though perhaps predictable) benefit of my principal evening activity.

Further underscoring this point are the dictionary's suggested synonyms: "casual, chance, fortuitous, contingent." These terms do not imply something that is necessarily required; to the contrary, a "casual" or "chance" relationship is nearly the polar opposite of a "causal" or "necessary" relationship. Measuring Buzek's "incidental" activities by a "casual" standard, there is little doubt that they are at least casually related to commuting. Transporting tools is facilitated by use of a company

---

**5.** Plaintiff's Post Hearing Brief at 5 (emphasis in original).

**6.** The following is a representative sample of definitions for the term *incidental*. THE AMERICAN HERITAGE DICTIONARY (Second College ed.1980): "1. Occurring or likely to occur as unpredictable or minor concomitant. 2. Of a minor, casual, or subordinate nature."; RANDOM HOUSE WEBSTER'S COLLEGE DICTIONARY (2000): "1. Happening or likely to happen in an unplanned or subordinate conjunction with something else. 2. Incurred casually and in addition to the regular or main amount.";

THE OXFORD ENGLISH DICTIONARY (2d ed.1989): "1. Occurring or liable to occur in fortuitous or subordinate conjunction with something else of which it forms no essential part; casual. 2. Incidental to: liable to happen to; to which a thing is liable or exposed. 3. Casually met with or encountered."

**7.** Buzek's post-hearing brief (at p. 4) incorrectly transcribes this dictionary's second definition as "incurred *causally*" instead of "incurred *casually*." This transcription error unfortunately undermines the cornerstone of Buzek's position.

vehicle, and end-of-day reports from home allows the employer to communicate with employees who go straight home after their last service call, rather than back to their employer's facility.[8]

Buzek fares only marginally better with the other dictionary cited, a previous edition (6th ed.1990) of Black's Law Dictionary. That edition defined *incidental* as "something necessary, appertaining to, or depending upon another which is termed the principal." The difficulty here is that, although this particular definition does suggest the concept of necessity, the current edition eliminates it entirely:

> **incidental,** *adj.* Subordinate to something of greater importance; having a minor role < ‹the FAA determined that the wind played only an incidental part in the plane crash›.

Black's Law Dictionary (8th ed.2004). While this current version does not rule out the possibility of a loose causal connection, it omits the implication of necessity contained in the earlier edition.

The explanation for this shift may be found in another authoritative reference, *Dictionary of Modern Legal Usage* (2d ed.1995), edited by Bryan A. Garner. This work draws a distinction between the phrases *incident to* and *incidental to* which parallels the "causal" vs. "casual" distinction mentioned above:

> **incident to; incidental to.** Though to some extent interchangeable historically, these phrases have undergone a plain differentiation that has gained acceptance among stylists. The former means "closely related to; naturally ap-

pearing with"; the latter, "happening by chance and subordinate to some other thing; peripheral." In the following sentence, *incident* is properly used: "In an action for fraud, exemplary damages are *incident to* and dependent on the recovery of actual damages." Here *incidental* is correctly used: "It is clear that testator's plan of accumulation was merely *incidental to* his primary charitable intention to create a source that would provide continuing income over the 400–year term for the maintenance of Masonic homes."

*Id.* at 430. The entry further explains that it is a "common blunder" for courts and legislatures to misuse one term for the other.[9] Mr. Garner is now also the current editor of Black's Law Dictionary, which perhaps explains why Black's current edition contains the looser definition of *incidental* that more closely conforms to accepted usage.

Based on this lexicographical authority, Buzek's restrictive interpretation of "activities ... incidental to the use of such vehicle for commuting" is not the most natural reading of ECFA. If, as Buzek contends, Congress meant that the referenced activities must be closely related to the use of company vehicles for commuting, such as filling the gas tank and checking the tires, then ordinary usage would express that meaning as "incident to," not "incidental to." PBG's construction of the term to encompass a broader range of activities tied even peripherally to commuting is more consistent with prevailing usage.

---

**8.** It may be true, as Buzek contends, that such activities would also be "incidental" to commuting in the employees' own cars, and therefore not covered by the ECFA. But whether such activities would be compensable outside the ECFA is not relevant here.

**9.** *Id.* Among examples cited is a Fifth Circuit case in which the terms are used inconsistent-

ly in the same opinion. *United States v. Fort Worth Club,* 345 F.2d 52, 57 (5th Cir.1965) ("Closer in point ... are cases holding that ... [a club's] outside profits must be ... strictly *incidental to* [read *incident to* ] club activities.... Here the rental income was not *incident to* the operation of the club.").

Nevertheless, given the subtle difference in spelling, historic interchangeability, and frequent misuse of these two terms, there is a distinct possibility that the drafters of the statute were less than linguistically precise and failed to express the true intent of Congress. In such a circumstance, the prudent course is to acknowledge the statute's possible ambiguity, and consult legislative history for additional markers of congressional intent. This is hardly a novel approach, considering the Supreme Court's own declaration that the Portal-to-Portal Act "is not free from ambiguity and the legislative history ... becomes of importance." *Steiner v. Mitchell*, 350 U.S. 247, 254, 76 S.Ct. 330, 100 L.Ed. 267 (1956); *see also Dunlop v. City Electric, Inc.*, 527 F.2d 394, 398–99 (5th Cir.1976) (considering Portal-to-Portal Act legislative history in construing the phrase "principal activity or activities"); *Adams v. United States*, 65 Fed.Cl. 217, 225 (2005) (looking to legislative history to resolve ambiguity in ECFA).

## B. Legislative History

Examination of legislative history is often difficult, sometimes treacherous.[10] In this instance, however, legislative history provides a definitive answer to the issue before this court—that is, whether Buzek's transporting tools in his company vehicle and submitting end-of-day reports from home are activities "incidental to the use of such vehicle for commuting," and thereby non-compensable under ECFA. The answer is contained in the following section of the House Report on the bill (H.R.1227) ultimately enacted as ECFA:

> Activities which are merely incidental to the use of an employer-provided vehicle for commuting at the beginning and end of the workday are similarly not considered part of the employee's principal activity or activities and therefore need not be compensable. It is not possible to define in all circumstances what specific tasks and activities would be considered "incidental" to the use of an employer's vehicle for commuting. *Communication between the employee and employer to receive assignments or instructions or to transmit advice on work progress or completion, is required in order for these programs to exist.* Likewise, routine vehicle safety inspections or other minor tasks have long been considered preliminary or postliminary activities and are therefore not compensable. *Merely transporting tools or supplies should not change the noncompensable nature of travel.* The committee expects that the Department of Labor will provide guidance in this area, consistent with the purposes of H.R. 1227.

H.R.Rep. No. 104–585, at 5 (1996) (emphasis supplied).

A nearly identical statement was made on the floor of the House by the bill's sponsor, Rep. Fawell (R–Ill.):

> On another point, H.R. 1227 states that activities which are merely incidental to the use of an employer-provided vehicle for commuting at the beginning and end of the workday are not considered part of the employee's principal activity or activities and therefore need not be compensable.... Communication between the employee and employer to receive assignments or instructions, or to transmit advice on work progress or comple-

---

**10.** *See generally Blanchard v. Bergeron*, 489 U.S. 87, 98–99, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989) (Scalia, J., concurring). Interpreting legislative history has been likened to a judge looking over a crowded room and picking out

his friends. *Conroy v. Aniskoff*, 507 U.S. 511, 519, 113 S.Ct. 1562, 123 L.Ed.2d 229 (1993) (Scalia, J., concurring in the judgment) (quoting Judge Harold Leventhal).

tion, is required in order for these programs to exist.... Merely transporting tools or supplies should not change the noncompensable nature of the travel.

104 Cong. Rec. H5479 (May 22, 1996) (statement of Rep. Fawell). Taken at face value, these expressions of congressional intent unequivocally resolve the questions before this court—end-of-day reports and transporting tools are incidental activities not compensable under ECFA.

Buzek resists this conclusion on several grounds. First, he argues that the purpose of ECFA was to provide "parity" of treatment for commuting time under the FLSA, whether an employee used his own vehicle or a company-provided vehicle. A finding of non-compensability here would create disparity rather than eliminate it, because similar activities have been held compensable in situations not governed by the ECFA. See e.g., *Dunlop v. City Electric, Inc.*, 527 F.2d 394 (5th Cir.1976) (finding pre-start time administrative chores performed by employees who arrived at employer's premises twenty minutes early were compensable); *Boudreaux v. Banctec, Inc.*, 366 F.Supp.2d 425, 432 (E.D.La. 2005) (finding a genuine issue of material fact as to whether boxing up parts at home after a service call is a principal activity); *Dooley v. Liberty Mutual Ins. Co.*, 307 F.Supp.2d 234 (D.Mass.2004) (finding that checking email and voice mail, preparing computers for use, and returning telephone calls at home were part of regular work).

But the premise of this argument—that parity was the goal of ECFA—is only partially true. The initial impetus for the legislation was undoubtedly a desire to avoid penalizing employers who provide company vehicles by requiring compensation for travel time which would not otherwise be compensable. H.R. Rep. 104–585, at p. 4. Equal treatment of *travel time*, whether the vehicle was owned by the company or the employee, was undoubtedly an ECFA goal. However, *incidental activities* are another story. The Portal–to–Portal Act has no counterpart exception for activities incidental to commuting in the employee's own vehicle. That act does exclude activities "preliminary to or postliminary to" the employee's principal activities, 29 U.S.C. § 254(a)(2), but this exclusion does not depend upon, or even refer to, the employee's mode of travel. ECFA does not mention "preliminary or postliminary" activities; instead, it introduces an entirely new category—activities incidental to commuting in a company vehicle. Because the Portal–to–Portal Act was silent regarding activities incidental to commuting, it makes no sense to speak of intended "parity" between the ECFA and the rest of the Portal–to–Portal Act in this respect.

Buzek next points to certain aspects of the legislative history purportedly at odds with the unambiguous passages from the House Report quoted above. Specifically he cites a section of that report entitled "Minority Views," signed by Democratic committee members who opposed the bill's passage.[11] At one point, this Minority View does challenge the majority's statement that activities such as routine vehicle safety inspections or other minor tasks would not be compensable under current law, and argues that the majority's view is

---

11. The opening paragraph declares:

We oppose H.R. 1227, as reported, because it effectively eliminates the right of workers to choose how they will commute to work, eliminates the ability of workers to exercise discretion over what they do while they are commuting, and allows employers to require employees to work off the clock, without being paid for their services. At a time when corporations are making historic profits, while working families are seeing their wages decline, the Republican Majority is seeking to enact legislation that deprives employees of their personal time and hard earned money. H.R. Rep. No 104–585, at p. 10.

inconsistent with the bill's own language. *Id.* at 10, 14. Nevertheless, the minority's main problem is with the bill itself:

> Adding salt to the wound, H.R. 1227 enables employers to require employees to perform services for free that employers are otherwise required to pay for under current law. The employer can require the employee to load the vehicle, to fuel the vehicle, to maintain the vehicle, to take job assignments, or to perform any other duty "incidental" to the commute without paying the employee for those services. In any other circumstance, an employer is unquestionably required under the FLSA to pay the employee for each and all of these services.

*Id.* at 14. In other words, the minority opposed the bill because they considered it an unwarranted departure from existing law to the detriment of employees. The majority responded that the bill was designed "to clarify" an area of law which in their view had been muddied by inconsistent DOL opinion letters. *Id.* at 6. Significantly, neither side in the debate doubted that this bill would ultimately render such incidental activities as taking job assignments and carrying tools non-compensable. Their disagreement concerned whether this outcome was a clarification or an expansion of current law.[12] Far from supporting Buzek's position, the Minority View merely confirms that ECFA accomplished exactly what they feared (and its proponents hoped) it would, which was to enlarge the scope of non-compensable activities related to employee commuting.

Buzek argues that other portions of the legislative history demonstrate its contradictory and unreliable nature. For example, one industry witness (Jack Herbert of the Petroleum Marketers Association of America) unsuccessfully urged that the bill include a specific provision that communications between employee and employer would not be deemed a compensable principal activity. Hearings on the Fair Labor Standards Act, No. 104–46, at 423, 448–49 (1995). No such amendment was ever submitted to a vote,[13] most likely because the sponsor of the bill (Rep. Fawell) believed the existing language already achieved the result sought by Mr. Herbert.[14] Buzek also points to other instances where the committee report arguably overreaches, such as when it states "it is the intent of the Committee" that the vehicle used for commuting should be of a type normally used for commuting, and that the employee should incur no out-of-pocket costs for driving, parking, or maintaining the vehicle. H.R. Rep. 104–585, at p. 5. Even granting that such statements of intent might be untethered to the statutory text, they have no bearing upon the issues before this court.

The legislative history discussing the activities at issue here—i.e. work status re-

---

**12.** Although that particular disagreement need not be resolved here, the view that ECFA's new incidental activities category merely clarified existing law is dubious at best.

**13.** Mr. Herbert was also not a member of Congress, so inferring legislative intent from his testimony is problematic. *See Francisco v. STOLT ACHIEVEMENT MT*, 293 F.3d 270, 276 (5th Cir.2002); *cf. In Re Application for Pen Register and Trap/Trace Device with Cell Site Location Authority*, 396 F.Supp.2d 747, 763–64 (S.D.Tex.2005) (relying upon congres-

sional testimony of FBI director, whose agency had been recognized by Congress as the driving force and leading advocate for the law enforcement legislation in question).

**14.** "But under this legislation if the use of the employer-owned vehicle for traveling to and from the actual place of employment would not be compensable, I would assume that it would be difficult to assume that the telephone call that would tell you where you are to go would be deemed to be compensable." Remarks of Rep. Fawell, *Hearings*, at 449.

ports and transportation of tools—is unquestionably rooted in the language of the statute. Proponents of the bill understood that the phrase "activities ... incidental to the use of such vehicle for commuting" was imprecise. H.R. Rep. 104–585, at p. 5 ("It is not possible to define in all circumstances what specific tasks and activities would be considered 'incidental' to the use of the employer's vehicle for commuting.") The Committee Report expected that the Department of Labor would continue to provide interpretive guidance on this and other issues under the Portal–to–Portal Act. *Id.* Understanding that the touchstone of DOL interpretation must be fidelity to statutory purpose, the report provides illustrative examples of incidental activities as contemplated by the bill's proponents. This is entirely appropriate. In fact, the DOL has subsequently relied upon this very legislative history in an opinion letter dealing with transportation of tools by police officers in patrol cars. Letter from Dept. of Labor, Office of Enforcement Policy, (July 28, 1997), 1997 DOLWH LEXIS 32.

In sum, the legislative history is in complete harmony with the literal text of the incidental activities exception. End-of-day reports and transportation of tools were regarded by the legislators as non-compensable activities under the ECFA, exactly as would be expected given the drafters' use of the phrase "incidental to" rather than "incident to" in the relevant text.

**C. Case Law**

Because this question of statutory interpretation has not been authoritatively decided by any appellate court, the cases relied upon by Buzek, with a single exception, are simply inapposite. The Supreme Court's decision in *IBP, Inc. v. Alvarez,* 546 U.S. 21, 126 S.Ct. 514, 163 L.Ed.2d 288 (2005), dealt with the compensability of time spent by meat and poultry plant workers changing into and out of special safety gear in locker rooms. While the Court's opinion did consider whether such activities were excluded from FLSA coverage by the Portal–to–Portal Act, the case did not involve employee commuting or the ECFA amendments. Likewise, the Fifth Circuit decision in *Dunlop v. City Electric, Inc.,* 527 F.2d 394 (5th Cir.1976), is immaterial because it concerns whether certain pre-shift activities were "preliminary to" the employees principal activity and therefore non-compensable under the pre-ECFA version of the Portal–to–Portal Act. Again, nothing in the opinion addresses employee commuting or the incidental activities provision added by ECFA twenty years later.

Buzek also points to certain district court cases, arguing that his position leaves those rulings "intact." *Boudreaux v. Banctec, Inc.,* 366 F.Supp.2d 425 (E.D.La.2005); *Dooley v. Liberty Mut. Ins. Co.,* 307 F.Supp.2d 234 (D.Mass.2004); *Reich v. Brenaman Elec. Service,* No. Civ.A. 95–CV–3737, 1997 WL 164235 (E.D.Pa.1997) (unpublished). Of course, district court opinions in themselves have no precedential effect, and so there is no obligation to conform to their holdings. *See RLJCS Enterprises, Inc. v. Professional Benefit Trust Multiple Employer Welfare Benefit Plan and Trust,* 487 F.3d 494 (7th Cir.2007). Such decisions may be useful as persuasive authority, however, to the extent they are well-reasoned and on point. Neither *Boudreaux* nor *Dooley* are on point, since they do not involve employees commuting in a company vehicle, which is the necessary trigger for ECFA to apply.

*Brenaman,* however, does deal with employees traveling in company vehicles, and reaches a contrary result. According to that unpublished decision:

The amendment at issue did not create a third, distinct exception to the require-

ment that employers pay their employees for all principal activities. Instead, the amendment was placed in the statute below the two existing exceptions. Such a placement indicates that it is intended to clarify the limits of those exceptions and assist courts in determining the meaning of "principal activity," not that it creates a third exception. *Brenaman,* 1997 WL 164235, at *5. Respectfully, this court disagrees with that magistrate judge's interpretation of the ECFA, for at least three reasons.

First, *Brenaman* assumes that that ECFA's travel and incidental activity exceptions are exactly parallel to the Portal–to–Portal Act travel and preliminary/postliminary exceptions, and are merely intended to clarify how those exceptions apply in the context of employer-provided vehicles. But the assumed parallel breaks down with regard to incidental activities, as a close reading of the text reveals. If Congress intended the incidental activities exception to encompass the same activities as the preliminary/postliminary exception, why was different language used? Note also that, unlike preliminary/postliminary activities, incidental activities under the ECFA are not tied to a "principal activity." Rather the ECFA exception covers activities incidental to "commuting," which is ordinarily not a principal or compensable activity. This lack of parallel syntax makes it difficult to assume that the two exceptions were intended to be coextensive.

Second, *Brenaman's* reasoning at a critical point is circular: "Activities incidental to the use of an employer's vehicle are likewise not compensable as a principal activity, since *by definition* an 'incidental activity' would be primarily for the employee's, and not the employer's benefit." *Id.* at *6 (emphasis supplied). This begs the question—by *whose* definition? Neither the statute nor the case law defines the term "incidental activity," and dictionary definitions do not support the claim, as we have seen. In other words, it is incorrect to view the ECFA category of incidental activities as merely the flip side of "principal activity," in the same way that the preliminary/postliminary category has come to be viewed.[15]

Finally, under *Brenaman's* reading the phrase "activities ... incidental to the use of such vehicle for commuting" becomes a redundancy. If this language were not intended to create a third exception to FLSA compensability, in addition to travel and preliminary/postliminary activities, what function does it serve? A court's duty is to insure that all words of a statute are given some effect, and not cast aside like useless appendages. *Astoria Federal Sav. and Loan Ass'n v. Solimino,* 501 U.S. 104, 112, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991).

### IV. Conclusion

As a matter of law under the Employee Commuting Flexibility Act, Buzek's end-of-day reports and transportation of tools are activities incidental to his use of a company vehicle for commuting. Time spent on these activities, as well as the commute home from his last work site, is therefore not compensable under the FLSA.[16] Accordingly, it is recommended

---

**15.** *See e.g. Dunlop v. City Electric, Inc.,* 527 F.2d 394, 400 (5th Cir.1976) ("[I]t is not only an employee's single predominant principal activity (and activities indispensable to it) which are compensable under the F.L.S.A., but rather all principal activities and any tasks incidental to them.").

**16.** In light of this holding there is no need to reach PBG's alternative argument that the activities at issue require so little time as to be *de minimis* and thereby outside the coverage of the FLSA. *See Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 692, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946) ("trifles may be disre-

that defendants' motion for summary judgment be granted in its entirety, and plaintiff's motion be denied.

The parties have ten (10) days from receipt of this Memorandum and Recommendation to file written objections. *See* FED. R.CIV.P. 72. Failure to file timely objections will preclude appellate review of factual findings or legal conclusions, except for plain error.

garded"); *Dunlop,* 527 F.2d at 401 (recognizing *de minimis* exception).